EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Angel A. Piazza Vélez y Elseis Piazza Vélez<br><br>      Recurridos<br><br>            v.<br><br>Isla del Río, Inc. Et Als.<br><br>      Peticionarios | Certiorari<br><br>2003 TSPR 7<br><br>158 DPR _____ |

Número del Caso: CC-2001-36


Fecha: 31 de enero de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional V


Juez Ponente:
                    Hon. Jorge Segarra Olivero


Abogado de la Parte Peticionaria:

                    Lcdo. Rafael E. Torres Torres


Abogado de la Parte Recurrida:

                    Lcdo. Heriberto Febus Bernardini

Materia: Cumplimiento Específico de Contrato


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Angel A. Piazza Vélez y
Elseis Piazza Vélez

     Recurridos


        vs.                    CC-2001-36
Certiorari


Isla del Río, Inc., Et Als.

     Peticionarios


Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.


San Juan, Puerto Rico, a 31 de enero de 2003.


Tenemos la ocasión para resolver un caso novel y extender la normativa sobre el término para la presentación de las mociones de relevo de sentencia que establece la Regla 49.2 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, R.49.2.

También tenemos la ocasión para hacer unas expresiones cardinales sobre los límites de la revisión judicial a nivel apelativo.


I

El 21 de junio de 1993 los recurridos Angel A. y Elseis Piazza Vélez (en adelante los Piazza)

instaron una demanda sobre incumplimiento de
contrato contra Vidal Farms, Inc., El Caño

Development, Inc., Carlos Montull, Adrián Hilera, John Doe y Richard Roe y contra la parte peticionaria, Isla del Río Inc. Luego de que los demandados contestaran dicha acción, y de varios otros trámites procesales, el 26 de agosto de 1997 el tribunal de instancia notificó una orden y le requirió a las partes que mostraran causa por la cual no debía desestimarse el pleito por inactividad, de conformidad con lo establecido por la Regla 39.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.39.2. El 9 de septiembre de 1997 los Piazza presentaron una moción informativa y alegaron muy escuetamente que las partes estaban en conversaciones para llegar a una transacción, por lo que solicitaron una prórroga de sesenta días para concluirlas.

Lo anterior no obstante, el 13 de noviembre de 1997 el tribunal *a quo* notificó una sentencia mediante la cual desestimó la demanda, por no haberse efectuado trámite procesal alguno durante los seis meses anteriores. Determinó que las vagas referencias a unas negociaciones de transacción, no justificaba mantener el caso vivo en el calendario judicial.

Inconformes con dicho dictamen, el 9 de diciembre de 1997 los Piazza apelaron ante el Tribunal de Circuito de Apelaciones. **La apelación referida se le notificó solamente a la codemandada Isla del Río Inc., que era la única con quien los demandantes Piazza habían estado tratando de negociar una transacción.** El 31 de marzo de 1998 el foro apelativo emitió una sentencia, revocó el dictamen del tribunal de instancia y devolvió el caso allí para que se continuara con los procedimientos correspondientes.

Resolvió que en el caso de autos no había ocurrido un abandono total de la acción que justificase su desestimación.

Aproximadamente un año después, el 9 de abril de 1999, la demandada Isla del Río, Inc. presentó ante el Tribunal de Circuito de Apelaciones una moción titulada "Reclamo de Mandato, Anulación de Sentencia Dictada y Desestimación de Recurso de Apelación", mediante la cual alegó que el recurso de apelación presentado por los Piazza el 9 de diciembre de 1997 no había sido notificado a la representación legal de El Caño Development y Vidal Farms, partes codemandadas en el pleito de autos. Se adujo que en vista de tal falta de notificación a todas las partes, el foro apelativo había dictado una sentencia sin tener jurisdicción para ello, por lo que procedía dejarla sin efecto. El 15 de julio de 1999 el foro apelativo notificó una sentencia mediante la cual dejó sin efecto la que había dictado el 31 de marzo de 1998. Resolvió que ésta había sido dictada sin jurisdicción por la falta de notificación del recurso a todas las partes codemandadas en el pleito. Se reactivó así, y quedó vigente, pues, la sentencia original del foro de instancia. Los Piazza no solicitaron la revisión de este dictamen del foro apelativo.

Así las cosas, el 24 de septiembre de 1999, los Piazza presentaron ante el foro de instancia una moción de relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil, *supra*, para que se dejara sin efecto la sentencia original del foro de instancia, notificada el 13 de noviembre de 1997, mediante la cual se había desestimado el pleito de autos por

inactividad. Isla del Río, Inc. entonces se opuso a dicha moción. Alegó que el tribunal no podía considerarla por haberse presentado la moción tardíamente. Adujo que había transcurrido ya el término de seis meses que fija la Regla 49.2 de Procedimiento Civil, *supra*, para tales mociones de relevo. El tribunal de instancia acogió esta oposición y el 18 de octubre de 1999 declaró sin lugar la solicitud de relevo de sentencia en cuestión, por haberse presentado fuera del término referido. Indicó que no se había establecido que la sentencia cuyo relevo se interesaba fuese nula. Expuso, además, que no era necesario la celebración de una vista para dilucidar la moción de relevo.

Inconformes con este otro dictamen, los Piazza recurrieron otra vez ante el foro apelativo, mediante un recurso de *certiorari*. Alegaron en lo pertinente que el tribunal de instancia había computado equivocadamente el término de seis meses que establece la Regla 49.2, *supra*, tomando como fecha de partida la del registro de la sentencia en cuestión. Adujeron que dicho término comenzaba a transcurrir a partir de la fecha cuando concluyó el procedimiento ante el Tribunal de Circuito de Apelaciones el 15 de julio de 1999, cuando se archivó en autos la sentencia de dicho foro apelativo que dejó en vigor la sentencia del tribunal de instancia cuyo relevo habían solicitado. El foro apelativo denegó la expedición del recurso por considerar que los Piazza habían presentado ante el foro de instancia su solicitud de relevo de sentencia de forma tardía.

Sin embargo, los Piazza presentaron una moción de reconsideración ante el foro apelativo oportunamente, y éste

reconsideró, acogió su planteamiento y dejó sin efecto la resolución anterior. Resolvió mediante una nueva resolución del 11 de diciembre de 2000 que los Piazza habían tenido una sentencia del foro apelativo a su favor que había reactivado el pleito en el foro de instancia hasta que la misma fue dejada sin efecto el 15 de julio de 1999 por el mismo foro apelativo, por lo que era a partir de esta fecha que había comenzado a decursar el término para que los Piazza presentaran una moción de relevo de sentencia al amparo de la Regla 49.2, *supra*. Determinó, por ende, que el tribunal de instancia tenía facultad para considerar la solicitud de relevo en cuestión, en vista de que había sido presentada dentro del término provisto para ello. Así, devolvió el caso para que el foro de instancia adjudicara en los méritos la procedencia de dicha moción de relevo.

Por no estar de acuerdo con el anterior dictamen, Isla del Río, Inc. acudió ante nos con el siguiente señalamiento de error:

> Erró el Honorable Tribunal al determinar que el término de seis meses (ciento ochenta días) hábil para que una parte pueda promover una solicitud de relevo de sentencia se cuenta desde la fecha de registro de una Sentencia dictada por el Tribunal Apelativo por virtud de la cual se declara sin jurisdicción y desestima una Apelación interpuesta contra una sentencia dictada en instancia, la cual advino final, firme e inapelable por el transcurso de todos los términos hábiles para obtener remedios contra aquélla.

**El 16 de febrero de 2001 expedimos el recurso de *certiorari* solicitado por Isla del Río, Inc. a fin de revisar la resolución referida del foro apelativo del 11 de diciembre de 2000. El 17 de abril de 2001, tardíamente, la peticionaria**

**solicitó que aceptáramos su petición de *certiorari* como su alegato, lo que hicimos. Los Piazza presentaron el suyo el 10 de mayo de 2001.    Pasamos a resolver.**

## II

En síntesis, Isla del Río, Inc. ha planteado ante nos que el procedimiento iniciado por los Piazza el 9 de diciembre de 1997 ante el foro apelativo, que fue luego dejado sin efecto por ese mismo foro por adolecer de falta de jurisdicción, fue nulo y se tiene por no realizado. Aduce que tal procedimiento no podía conferir derecho alguno que beneficiara a la parte que lo inició debido a que fue dejado sin efecto por razones jurisdiccionales. Señala que, en vista de ello, lo acontecido en el foro apelativo no constituyó el "procedimiento" al que se refiere la Regla 49.2 de Procedimiento Civil, *supra*, porque no resultó en cambio sustantivo alguno en la sentencia que se pretendió revisar.

Los Piazza, por su parte, aducen, en esencia, que conforme lo dispuesto por la Regla 49.2, *supra*, una moción de relevo de sentencia debe presentarse dentro del término de seis meses de "haberse llevado a cabo el procedimiento" y que ello incluye un procedimiento como el instado por Isla del Río, Inc. ante el foro apelativo el 9 de abril de 1999, mediante el cual obtuvieron un dictamen a su favor que dejaba sin efecto una decisión anterior de ese foro que había sido emitida sin jurisdicción.

Examinemos la normativa aplicable a la controversia.

## III

En lo pertinente, la Regla 49.2 de Procedimiento Civil, *supra*, dispone lo siguiente con relación a las mociones de relevo:

**"La moción se presentará dentro de un término razonable pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento".**

La aludida Regla 49.2, *supra*, incorpora una facultad importante que tienen los tribunales para dejar sin efecto alguna sentencia, u orden suya por causa justificada. El remedio de reapertura referido se origina en la propia razón de ser de los foros judiciales: hacer justicia. Ortiz Serrano v. Ortiz Díaz, 106 D.P.R. 445, 449 (1977); Southern Construction Co. v. Tribunal Superior, 87 D.P.R. 903, 905-906 (1963). Dicho mecanismo procesal post sentencia se reconoció expresamente en el Art. 140 de nuestro antiguo Código de Enjuiciamiento Civil, que a su vez fue tomado del Art. 473 del Código de Enjuiciamiento Civil de California. Great Am. Ins. Co. v. Corte, 67 D.P.R. 564, 566 (1947); González v. Aldarondo, 47 D.P.R. 156, 160 (1934).

Claro está, aunque el remedio de reapertura existe en bien de la justicia, no constituye una facultad judicial absoluta, porque a éste se contrapone la fundamental finalidad de que haya certeza y estabilidad en los procedimientos judiciales, y de que se eviten demoras innecesarias en el trámite judicial. **Le toca a los tribunales, pues, establecer un balance adecuado entre ambos intereses.** Fine Art Wallpaper v. Wolff, 102 D.P.R. 451, 457-458 (1974). Por ello, aunque la Regla 49.2, *supra*, debe interpretarse de forma liberal, esto no significa que se le debe dar atención desmedida a uno de los dos intereses que hay que

balancear. <u>Dávila v. Hosp. San Miguel, Inc.</u>, 117 D.P.R. 807, 818 (1986). Por ello hemos dicho que el remedio de reapertura **"no es una llave maestra para reabrir a capricho el pleito ya adjudicado..."** <u>Ríos v. Tribunal Superior</u>, 102 D.P.R. 793, 794 (1974). También por ello hemos resuelto que el término de seis meses para la presentación de la moción de relevo de sentencia es **fatal**. <u>Sánchez Ramos v. Troche Toro</u>, 111 D.P.R. 155, 157 (1981); <u>Mun. de Coamo v. Tribunal Superior</u>, 99 D.P.R. 932, 937 (1971); <u>Srio. del Trabajo v. Tribunal Superior</u>, 91 D.P.R. 864, 867 (1965). Las determinaciones judiciales que son finales y firmes no pueden estar sujetas a ser alteradas por tiempo indefinido. Por ello la Regla 49.2, *supra*, es categórica en cuanto a que la moción de relevo debe presentarse dentro de un término razonable **"pero en ningún caso después de transcurridos seis (6) meses ...".** <u>Sánchez Ramos v. Trocha Toro</u>, *supra*.

Como se sabe, una moción de relevo de sentencia no puede ser sustitutiva de los recursos de revisión o reconsideración, <u>Olmedo Nazario v. Sueiro Jiménez</u>, 123 D.P.R. 294, 299 (1989); pero puede concederse aun después de que dicha sentencia haya advenido firme y final. <u>Pagán v. Alcalde Mun. de Cataño</u>, 143 D.P.R. 314, 328 (1997). La Regla 49.2 de Procedimiento Civil, *supra*, presta particular atención a situaciones en que se solicita el relevo de una sentencia cuando ya se encuentra pendiente su apelación o revisión ante el foro apelativo, o cuando ya se ha realizado tal apelación o revisión. Dispone que el tribunal apelado o revisado no puede conceder el relevo solicitado sin el permiso

del tribunal apelativo o revisor. [1] Ya hemos resuelto anteriormente que el término de seis meses en cuestión no se amplía porque se haya entablado un procedimiento de apelación o revisión. **"El hecho de que durante parte de ese término el caso estuviese pendiente de consideración en un procedimiento de revisión o apelación no interrumpe el término mencionado."** <u>Mun. de Coamo v. Tribunal Superior</u>, *supra*, pág. 937. La propia Regla 49.2, *supra*, expresamente dispone que si se interesa presentar la moción de relevo mientras está pendiente una apelación o revisión ante el foro apelativo, o luego que éste dicte sentencia, **"en ambos casos la moción de relevo deberá siempre presentarse ante el tribunal apelado dentro del término antes señalado"**.

Se ha apuntado que la aplicación del término de seis meses en los casos en que la sentencia cuyo relevo se interesa está en apelación, o en que la apelación ya ha sido resuelta, es irrazonable. Se ha argumentado que la tramitación de una apelación usualmente toma más de seis meses, por lo que en tales

---

[1] El último párrafo de la Regla 49.2 lee:

> Mientras esté pendiente una apelación o un recurso de *certiorari* de una resolución final en procedimiento de jurisdicción voluntaria, el tribunal apelado no podrá conceder ningún remedio bajo esta regla, a menos que sea con el permiso del tribunal de apelación. Una vez que el tribunal de apelación dicte sentencia, no podrá concederse ningún remedio bajo esta regla que sea inconsistente con el mandato, a menos que se obtenga previamente permiso para ello del tribunal de apelación. En ambos casos, la moción de relevo deberá siempre presentarse ante el tribunal apelado dentro del término antes señalado, y si éste determina que estaría dispuesto a conceder el remedio, se acudirá entonces ante el tribunal de apelación en solicitud del referido permiso. Regla 49.2 de Procedimiento Civil, *supra*.

casos de apelación, el término referido en efecto precluye el uso del remedio de reapertura. Véase, Hernández Colón, *Derecho Procesal Civil*, Michie, 1997, págs. 309-310. No cabe duda de que lo señalado por el Profesor Hernández Colón puede ocurrir en ocasiones. **Sin embargo, la fatalidad del término de seis meses para las mociones de reapertura es la clara norma procesal vigente**. En vista de la norma patentemente clara que fija la Regla 49.2, *supra*, sobre el particular, no tenemos la facultad de alterarla por mero *fiat* judicial. La misma norma prevalece en la jurisdicción federal, donde se ha resuelto reiteradamente que los procedimientos de apelación o revisión no interrumpen el término para presentar la moción de relevo que establece la Regla 60 de Procedimiento Civil federal, la cual es similar a la nuestra. Como bien se señala en *12 Moore's Federal Practice* § 60.65[2][d] (Mathew Bender, 3d ed.):

> **"Virtually all courts agree that a pending appeal does not toll the running of the period for making a Rule 60(b) motion."**

Igual criterio expresan los profesores Wright, Miller y Kane, en su conocida obra *Federal Practice and Procedure*, Civil 2d § 2866 págs. 390-391 (1995). Prevalece, pues, en cuanto a éste asunto el interés porque los dictámenes judiciales no estén sujetos a ser alterados por tiempo indefinido.

Debe señalarse que en la jurisdicción federal se ha establecido de manera firme que en casos en los cuales se presenta un recurso de apelación contra la sentencia del tribunal de instancia que resulta eventualmente en algún cambio sustancial

en el dictamen de ese foro, entonces el término para presentar la moción de relevo de sentencia comienza a transcurrir desde la fecha en que se registra la nueva sentencia que el tribunal de instancia emite como consecuencia de la revisión judicial. Véase, 11 Wright & Miller, *Federal Practice and Procedure*, Civil 2d § 2866, pág. 390 (1995). Como bien se señala en la opinión de conformidad emitida en este caso por el Juez Asociado señor Hernández Denton, la norma referida ha sido reconocida por múltiples tribunales federales por razón de su evidente sentido jurídico: cuando existe causa para ello, una parte afectada por una nueva sentencia de un foro de instancia debe tener la oportunidad de solicitar el relevo de dicha sentencia que se emitió *a posteriori* debido a la intervención de un foro apelativo.

Es lógico que adoptemos en nuestra jurisdicción la norma señalada en el párrafo anterior de esta opinión. Nótese que no se trata realmente de una excepción a la naturaleza fatal del término de seis meses que la Regla 49.2, *supra*, fija para la presentación de una moción de relevo de sentencia. Lo que ocurre en la situación referida es que existe **un nuevo dictamen** del foro de instancia, **una nueva sentencia** que es sustancialmente distinta de la original, propiciada por la revisión judicial de ésta. Esta **segunda** sentencia es susceptible de ser objeto de **su propia solicitud de relevo**, por lo que estaría sujeta a su propio término de seis meses a partir de la fecha en que fue registrada.

En el caso de autos, claro está, no hubo ninguna segunda sentencia dictada por el foro de instancia.

En resumen, pues, reiteramos que transcurrido el término de seis meses del registro de alguna sentencia, no puede considerarse una moción de relevo. La moción debe presentarse dentro de un término razonable pero **nunca** después de transcurridos los seis meses referidos. Cuevas Segarra, *Práctica Procesal Puertorriqueña, Procedimiento Civil*, Publicaciones JTS, pág. 269 (1988).

IV

Aplicada estrictamente la normativa anterior, la moción de relevo en el caso de autos se presentó tardíamente tal como resolvió el foro de instancia y aun el propio foro apelativo inicialmente, antes de reconsiderar su dictamen mediante su resolución de 11 de diciembre de 2000. El término de seis meses en cuestión comenzó a decursar en el caso de autos a partir del 13 de noviembre de 1997, cuando el foro de instancia notificó la sentencia mediante la cual desestimó por inactividad la demanda de los Piazza. Cuando éstos presentaron su moción de relevo el 24 de septiembre de 1999, había transcurrido un término de más de veintidós meses de la fecha de notificación, lo que resulta muy en exceso del límite máximo de seis meses.

En su último dictamen en el caso de autos, el foro apelativo, a instancia de los Piazza, determinó **en reconsideración** que el término de seis meses referido comenzó a decursar el 15 de julio de 1999, cuando dicho foro notificó que había dejado sin efecto su propio dictamen anterior del 31 de marzo de 1998 mediante el

cual había revocado la sentencia de instancia del 13 de noviembre de 1997. Resolvió el foro apelativo en este último dictamen que al emitirse el  dictamen anterior del 31 de marzo de 1998, que revocaba la sentencia de desestimación por inactividad del foro de instancia, **se había reactivado el pleito en el tribunal de instancia** hasta el 15 de julio de 1999, cuando el dictamen del 31 de marzo de 1998 a su vez fue dejado sin efecto por el foro apelativo por ser nulo.

El aludido razonamiento del foro apelativo, que le da plena eficacia por algún tiempo a una sentencia suya que ese mismo foro luego determinó que era nula por haber sido dictada sin jurisdicción, es insostenible. Lo que resolvió el foro apelativo en su último dictamen, en efecto, es que la sentencia de desestimación del tribunal de instancia, que fue notificada el 13 de noviembre de 1997, se tenía por no dictada a partir del 31 de marzo de 1998 hasta el 15 de julio de 1999 porque durante ese periodo existió un dictamen revocatorio del foro apelativo, pero que dicha sentencia había recobrado su efectividad el 15 de julio de 1999 cuando se reconoció la nulidad del referido dictamen revocatorio del foro apelativo por haberse emitido éste sin jurisdicción. Es decir, que se le atribuyó a la sentencia **nula** del foro apelativo del 31 de marzo de 1998 el efecto de reactivar por quince meses y medio el pleito de instancia y de dejar sin vigencia durante ese tiempo la sentencia *a quo* que lo había desestimado.

**En términos prácticos, pues, el foro apelativo le atribuyó a la referida sentencia nula el efecto de interrumpir durante**

**quince meses y medio el término de seis meses de la Regla 49.2 de Procedimiento Civil**, *supra*. Ello resulta ser insostenible, en primer lugar, porque se trata de un término **fatal**, que por su propia naturaleza extintiva de derecho, no es susceptible de interrumpirse o extenderse. Sánchez Ramos v. Troche Toro, *supra*. Resulta ser insostenible, además, porque tal efecto interruptor no es atribuible a una sentencia **nula**, que se tiene por inexistente y por tanto no podía tener efecto alguno. Vázquez v. A.R.P.E., 128 D.P.R. 513, 537 (1991); Figueroa v. Banco de San Juan, 108 D.P.R. 689 (1979). Fue errado e improcedente, pues, el dictamen del foro apelativo impugnado ante nos, que decretó que la moción de relevo en cuestión se presentó oportunamente.[2]

Así mismo, es menester señalar que el dictamen en reconsideración del foro apelativo impugnado aquí tiene otra

---

[2] En apoyo del dictamen del foro apelativo que se ha impugnado ante nos en este caso, los Piazza han alegado en la alternativa que **"el procedimiento"** mencionado en la Regla 49.2, *supra*, cuando se dispone que en ningún caso la moción de relevo se presentará después de transcurridos seis meses de haberse registrado la sentencia u orden o **"haberse llevado a cabo el procedimiento"**, es el procedimiento ante el foro apelativo. Han alegado, pues, que los seis meses han de contarse a partir de la sentencia del foro apelativo notificada el 15 de julio de 1999 porque esa sentencia se emitió a través del "procedimiento" ante dicho foro apelativo en el que se reclamó que la sentencia desestimatoria del tribunal de instancia seguía en pie.

No tienen razón los Piazza. No cabe de ningún modo la interpretación que hacen de este aspecto de la Regla 49.2, *supra*. Al examinarse integralmente el texto de la Regla referida es claro que las dos menciones que se hacen en dicha Regla del "procedimiento" se refieren ambas al mismo evento, que en ningún caso es a nivel apelativo. No se trata de una apelación o revisión. Se refiere únicamente a algún procedimiento ante el foro de instancia de cuyos efectos la parte afectada interesa ser relevada. La letra de la Regla es patentemente clara en este sentido. No cabe de modo alguno la interpretación propuesta por los Piazza.

falta grave: autoriza la consideración de una moción de relevo que no sólo era tardía sino que era además **patentemente inmeritoria**. Como hemos resuelto reiteradamente antes, dichas mociones no son sustitutivas de los recursos de revisión. Olmedo Nazario v. Suerio Jiménez, *supra.* No pueden usarse para corregir errores cometidos por el tribunal de instancia sino los cometidos por las partes. Pagán v. Alcalde Mun. de Cataño, *supra*, págs. 329-330. El planteamiento que los Piazza hicieron al foro de instancia al solicitar de éste el relevo referido el 24 de septiembre de 1999, fue **esencialmente el mismo** que le habían formulado antes al foro apelativo el 9 de diciembre de 1997 cuando impugnaron allí la desestimación de su acción por el foro de instancia. La médula de su planteamiento siempre ha sido que el foro de instancia no podía desestimar su acción debido a que las partes estaban negociando una transacción y por ende no había total inactividad o abandono de la acción, y que tenían derecho a una vista evidenciaria para dilucidar el asunto de las negociaciones. Dicho planteamiento, que aduce un supuesto error de derecho por parte del foro de instancia, podría ser materia para procurar una revisión, como la que instaron los Piazza el 9 de diciembre de 1997, pero no para solicitar el relevo de la sentencia impugnada. Lo que se pretendía con la moción de relevo en cuestión era una revisión sobre la corrección de la sentencia de desestimación. La cuestión planteada no cualificaba, pues, para su consideración en una moción de relevo. Erró por ello también el foro apelativo al determinar que procedía la consideración de la moción de relevo referida, cuando era

claramente evidente que el asunto planteado por los Piazza no podía atenderse mediante una moción de relevo.

V

Antes de concluir, debemos examinar otro asunto de cardinal importancia, que nadie ha planteado ante nos.

En el caso de autos, la primera intervención del Tribunal de Circuito de Apelaciones, promovida por los demandantes Piazza, resultó en la revocación de la sentencia del foro de instancia mediante la cual se había ordenado la desestimación de la demanda por inactividad. En esa ocasión, el foro apelativo **remitió el mandato, archivó el caso y lo devolvió al foro de instancia para que continuasen los procedimientos allí**. Completada así la apelación ante el Tribunal de Circuito de Apelaciones, los procedimientos continuaron ante el foro de instancia. Sin embargo, **aproximadamente un año después** de emitido el referido primer dictamen del foro apelativo, la codemandada Isla del Río, Inc. recabó y obtuvo una segunda intervención del foro apelativo en este caso, que dio lugar a la sentencia de ese foro notificada el 15 de julio de 1999, mediante la cual se dejó sin efecto su primer dictamen del 31 de marzo de 1998, por ser éste nulo.

Esta segunda intervención del foro apelativo presenta graves consideraciones de orden público que debemos atender. Habiendo remitido dicho foro el mandato con respecto a su dictamen original y habiéndose archivado el caso luego de remitirse ese mandato, surge la interrogante de si el Tribunal de Circuito de

Apelaciones **conservaba jurisdicción para reabrir el caso y dejar sin efecto su dictamen anterior**.

Recientemente resolvimos, en un caso relativo a la función revisora del foro apelativo, que **"una vez se remite el mandato por el Secretario de Circuito, el caso que estaba ante la consideración de dicho foro concluye para todos los fines"**. Pérez, Ex Parte v. Depto. De la Familia, 147 D.P.R. 556, 571 (1999). ¿Debe prevalecer esta norma general aun en situaciones como la de autos en que el foro apelativo vuelve a intervenir con un caso después de remitido el mandato movido por su creencia de que su anterior dictamen era nulo?

La norma general que impide de ordinario que el foro apelativo pueda volver a intervenir con un caso ya adjudicado de manera final y firme, responde a intereses sociales importantes relativos a la estabilidad y el orden de los procedimientos judiciales. Se trata de una de varias normas análogas "que adopta cualquier sistema jurídico avanzado a fines de velar por el trámite ordenado y pronto de los litigios, así como por la estabilidad y certeza del derecho...". Núñez Borges v. Pauneto Rivera, 130 D.P.R. 749, 755 (1992); Torres Cruz v. Mun. de San Juan, 103 D.P.R. 217, 222 (1975). Sin embargo, reconocemos que en casos **muy excepcionales** es concebible que un foro apelativo pueda válidamente ordenar la devolución de su mandato, a los fines de reabrir un caso que ya era final y firme, con el propósito de modificar un dictamen que por razones desconocidas por ese foro al emitirlo resultó ser crasamente erróneo e injusto. Coincidimos con la doctrina federal sobre este asunto, que admite que pueden

haber unas pocas ocasiones en las cuales se justifique tal extraordinario proceder de un foro apelativo de revocar el mandato y reabrir el caso. Véase, Calderón v. Thompson, 523 US 538 (1998), en cuya decisión el Tribunal Supremo federal hace hincapié en que **"the power [of courts of appeals to recall their mandates] can be exercised only in extraordinary circumstances . . . it is one of last resort, to be held in reserve against grave, unforeseen contingencies"**. Véase también, Wright, Miller & Cooper, *Federal Practice and Procedure*, 3d ed., Vol. 16 A, págs. 735-741 (1999).

En el caso de autos, la nueva intervención referida del foro apelativo puede justificarse, a pesar de ser un proceder extraordinario, en vista de la clara nulidad del dictamen original de dicho foro apelativo aquí. La falta de notificación a los otros codemandados del recurso de apelación que dio lugar al referido dictamen original fue una de naturaleza grave. En múltiples ocasiones antes hemos insistido en que aquél que acude ante un foro apelativo debe notificar sur recurso a todas las otras partes del caso dentro del término correspondiente; **y que la falta de notificación de dicho recurso a una de esas partes priva de jurisdicción al tribunal para entender en los méritos del recurso**. Velázquez v. Adm. de Terrenos, res. el 7 de marzo de 2001, 153 D.P.R. ___, 2001 TSPR 31, 2001 JTS 35; Colón Morales v. Rivera Morales, 146 D.P.R. 930 (1998); Olmeda Díaz v. Depto. de Justicia, 143 D.P.R. 596 (1997); Méndez v. Corp. Quintas San Luis, 127 D.P.R. 635 (1991); González Santos v. Bourns P.R., 125 D.P.R. 48 (1989); Ortiz Rivera v. Agostini, 93 D.P.R. 225 (1966).

Véase, además, Rodríguez v. Sucn. Martínez, res. el 18 de agosto de 2000, 151 D.P.R. _____, 2000 TSPR 126, 2000 JTS 138. El carácter jurisdiccional de la notificación a las otras partes es una norma medular que existía aún antes de que se hubiese creado el Tribunal de Circuito de Apelaciones, y que hemos aplicado aún a nuestro propio foro, declarándonos sin jurisdicción para revisar dictámenes *a quo* cuando no se ha cumplido con la notificación a otras partes. Ortiz Rivera v. Agostini, *supra*, pág. 225. No puede haber dudas, pues, de que en el caso de autos el dictamen original referido del foro apelativo era nulo porque dicho foro carecía de jurisdicción para emitirlo por lo que pueda aceptarse la excepcional segunda intervención del foro apelativo aquí para dejar sin efecto su nulo dictamen previo. Lo que es insostenible es que se le atribuya a ese nulo dictamen previo el efecto de extender el término fatal de seis meses para presentar una moción de relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil.

VI

Por los fundamentos expuestos, se dictará sentencia para dejar sin efecto la resolución del foro apelativo del 11 de diciembre de 2002, y para confirmar el dictamen del foro de instancia en este caso del 18 de octubre de 1999.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Angel A. Piazza Vélez y
Elseis Piazza Vélez

    Recurridos


      vs.                              CC-2001-36
Certiorari


Isla del Río, Inc., Et Als.

    Peticionarios



SENTENCIA


San Juan, Puerto Rico, a 31 de enero de 2003.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se dicta sentencia para dejar sin efecto la resolución del Tribunal de Circuito de Apelaciones, Circuito Regional V de Ponce-Aibonito, del 11 de diciembre de 2002, y para confirmar el dictamen del Tribunal de Primera Instancia, Sala Superior de Ponce, en este caso del 18 de octubre de 1999.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió Opinión de Conformidad. El Juez Asociado señor Rivera Pérez concurre sin opinión. La Jueza Asociada señora Naveira de Rodón emitió Opinión Disidente. El Juez Asociado señor Rebollo López no intervino.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel L. Piazza Vélez y
Elseis Piazza Vélez

   Recurridos

   v.                                    CC-2001-36
                                            Certiorari

Isla del Río, Inc. et al.

   Peticionarios

Opinión de Conformidad emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 31 de enero de 2003.

Aunque estamos de acuerdo con el dictamen mayoritario del Tribunal que revoca la decisión del Tribunal de Circuito de Apelaciones, suscribimos esta Opinión de Conformidad por entender que es necesario expresarnos con más detenimiento en cuanto al momento en que comienza a decursar el término para solicitar el relevo de una sentencia. Veamos.

I

Ciertamente, a la luz del texto de nuestra Regla 49.2 sobre moción de relevo de sentencia,[3] de la jurisprudencia pertinente a nivel federal y el

---

[3] 32 L.P.R.A. Ap. III, R.49.2.

criterio de los tratadistas al respecto, la presentación de un recurso de apelación no interrumpe el término para solicitar el relevo de sentencia ante el propio tribunal apelado. No obstante, la norma anterior no dispone adecuadamente del asunto ante nos.

En el presente caso, el Tribunal de Primera Instancia desestimó la demanda por inactividad. Los demandantes apelaron, y cuatro (4) meses después de dicho dictamen, el Tribunal de Circuito de Apelaciones lo revocó y ordenó la continuación de los procedimientos. Así las cosas, después de más de un año, ante la solicitud de una de las partes demandadas, el foro apelativo dejó sin efecto el dictamen mediante el cual revocó al tribunal de instancia. Determinó que dicha sentencia se dictó sin jurisdicción por falta de notificación del recurso apelativo a ciertas partes demandadas. Como resultado de lo anterior, la causa de acción de los demandantes quedó automáticamente desestimada por inactividad. En vista de ello, los demandantes presentaron una moción de relevo de sentencia ante el tribunal de instancia, la cual fue denegada por tardía. Dicho foro resolvió que el término para presentar la moción de relevo de sentencia comenzó a decursar a partir de la desestimación por inactividad. El Tribunal de Circuito de Apelaciones revocó dicho dictamen. Inconformes, los demandados acudieron ante nos.

II

Ante el cuadro fáctico y procesal anterior, la Opinión del Tribunal determina que el término para presentar la referida moción de relevo de sentencia comenzó a decursar a partir de

la fecha en que el tribunal de instancia originalmente desestimó la demanda por inactividad. Se le da poca consideración a la intervención del Tribunal de Circuito de Apelaciones que tuvo el efecto de cambiar radicalmente la determinación del tribunal *a quo* y la posterior acción de dicho tribunal de dejar sin efecto su dictamen. Estos procedimientos deben evaluarse más detenidamente para poder precisar la norma justa que atienda estas situaciones particulares.

Aunque si bien es cierto que la presentación de un recurso de apelación no interrumpe el término para presentar una moción de relevo de sentencia, se ha sostenido por la jurisprudencia federal y por la doctrina, que si el dictamen del foro apelativo modifica sustantivamente el dictamen apelado, el referido término comenzará a decursar a partir de que el tribunal apelado emita una nueva decisión a la luz del mandato del foro apelativo.

En este sentido, Wright & Miller sostiene lo siguiente:

> The [motion for relief from judgment] can be made even though an appeal has been taken and is pending. For this reason, it is held that the pendency of an appeal does not extend the one-year limit **although if the appeal should result in a substantive change in the judgment the time would run from the entry of the new judgment entered on mandate of the appellate court.** (citas omitidas). 11 Wright & Miller, <u>Federal Practice and Procedure</u>, Civil 2d § 2866, pág. 390 (1995).

Asimismo, el reconocido tratado de derecho procesal civil Moore's Federal Practice explica que si el tribunal apelativo cambia sustantivamente el dictamen del tribunal *a quo*, el término de seis (6) meses que se tiene para presentar una moción de relevo de sentencia comienza a decursar de nuevo a partir del dictamen que recaiga a la luz del mandato del foro de superior jerarquía. Relief from Judgment or Order, 12 <u>Moore's</u>

Federal Practice, 3era ed., Mathew Bender, 2000, sec. 60.65[4][d], pág. 60-202 ("pending appeal will not toll one-year period, but appellate decision might restart it").

La norma anterior, además, ha sido reconocida por múltiples tribunales federales. *Véase:* Transit Casualty Co. v. Security Trust Co., 441 F2d 788 (5to Cir. 1971), *certiorari denegado*, 404 US 883 (1971); A. Redic v. H. Watts, 862 F2d 314 (4to Cir. 1988); Simon v. Navon, 116 F3d 1 (1er Cir. 1997); Berwick Grain Inc. v. Illinois Department of Agriculture, 189 F3d 556 (7mo Cir. 1999); Gegenheimer v. Galan, 920 F2d 307 (5to Cir. 1991). Todas estas decisiones tienen su origen en el razonamiento del Tribunal Supremo Federal en Federal Trade Comisión v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206 (1952). En dicho caso, aunque en un contexto diferente al presente, se sostuvo que el término para apelar se reinstala cuando el mismo tribunal sentenciador posteriormente altera cuestiones legales y obligaciones entre las partes, las cuales ya habían sido adjudicadas con finalidad por un dictamen anterior del mismo tribunal. Moore's Federal Practice, *supra*. *Véase además*, Charles v Daley, 799 F.2d 343 (7mo Cir. 1986) ("a significant change in a judgment starts all time periods anew", *citando a* Federal Trade Comisión v. Minneapolis-Honeywell Regulator Co., *supra*).

En el presente caso, estamos conformes con la conclusión de la Opinión del Tribunal en cuanto a que la moción de relevo de sentencia se presentó tardíamente porque el trámite apelativo no interrumpió el término de seis (6) meses que dispone la Regla 49.2 de Procedimiento Civil, *supra*. No

obstante, esta conclusión es correcta porque el dictamen posterior del tribunal apelativo, mediante el cual dejó sin efecto la sentencia que revocó el dictamen desestimatorio del tribunal de instancia, no modificó sustantivamente la decisión apelada. En otras palabras, si en esa segunda intervención el Tribunal de Circuito de Apelaciones hubiese revocado al tribunal de instancia y éste a su vez emite una nueva decisión a la luz de dicho mandato, sería desde esta última fecha que comenzaría a decursar el término para solicitar relevo de sentencia, y no desde el primer dictamen de instancia.

A pesar de que el resultado del caso de autos sería el mismo, esto es, que la moción no fue presentada dentro del término correspondiente, a nuestro entender el término no siempre comienza a decursar a partir del dictamen del tribunal de instancia, sino que en ciertos casos el dictamen del foro apelativo que altere sustantivamente el dictamen de instancia tendrá el efecto de reinstalar el término para solicitar relevo de sentencia. Es lógico que una parte pueda tener la oportunidad de solicitar el relevo de una sentencia que no existía sino hasta la intervención del tribunal apelativo.

Por entender que era necesario ampliar los pronunciamientos de la Opinión del Tribunal, suscribimos esta Opinión de Conformidad.


Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel A. Piazza Vélez y
Elseis Piazza Vélez

    Recurridos

       v.                           CC-2001-36

Isla del Río, Inc., et als.

    Peticionarios

**Opinión Disidente emitida por la Juez Asociada señora Naveira de Rodón.**

San Juan Puerto Rico a 31 de enero de 2003

    Por entender que la mayoría se equivoca al determinar que no procedía la moción de relevo de sentencia por haber sido ésta presentada pasado el término de naturaleza fatal de seis (6) meses[4] que establece la Regla 49.2, disentimos. Bco. Santander P.R. v. Fajardo Farms Corp., 141 D.P.R. 237, 243 (1996); Sánchez Ramos v. Troche Toro, 111 D.P.R. 155 (1981); Mun. Coamo v. Tribunal Superior, 99 D.P.R. 932, 937 (1971).

    El presente caso nos permite analizar las funciones de los foros apelativos, y cómo éstas se entrelazan y complementan con las que realizan los tribunales de instancia, para llevar a cabo el propósito cardinal del sistema judicial de hacer justicia. Para una mejor

comprensión de los problemas procesales que pueden surgir y la forma en que se deben confrontar, creemos necesario hacer una relación detallada de los procedimientos llevados a cabo en el caso de autos.

I. HECHOS

El asunto ante nos se originó con una demanda de incumplimiento de contrato presentada el 21 de junio de 1993, por los Sres. Ángel Amador Piazza Vélez y Elseis Piazza Vélez, contra Isla del Río, Inc. (en adelante Isla), Vidal Farms, Inc. (en adelante Vidal Farms) y El Caño Development, Inc. (en adelante El Caño), entre otros.[5] El codemandante Elseis Piazza Vélez alegó que suscribió un contrato de compraventa de una parcela de terreno con Empresas Vidal Valdivieso (en adelante Empresas Vidal)[6]. De otra parte, el codemandante Ángel Amador Piazza Vélez alegó que suscribió un contrato de servicios profesionales con dicha empresa. Ambos alegaron que Empresas Vidal incumplió con estos contratos y solicitaron se ordenase su cumplimiento.[7]

---

[4] El periodo de seis (6) meses para presentar una moción de relevo de sentencia u orden se computa a base de ciento ochenta (180) días. Rosario Rodríguez v. E.L.A., 122 D.P.R. 544 (1988).

[5] **También se incluyeron como demandados al Sr. Carlos Montull, Adrián Hilera, John Doe, Richard Doe, el Sr. Ángel L. Morales, la Sra. Luz D. Adames y la sociedad de bienes gananciales compuesta por ambos.**

[6] Surge de la demanda que Empresas Vidal dejó de existir por razón de permuta de acciones en división de caudal hereditario siendo estas propiedades adjudicadas a Isla y a El Caño.

[7] El 3 de mayo de 1995, los demandantes enmendaron la demanda a los únicos fines de incluir como codemandados a los esposos Ángel L. Morales, Luz D. Adames Rivera y la sociedad legal de

Luego de una serie de trámites procesales, incluyendo varias mociones relacionadas con el descubrimiento de prueba y dos (2) sentencias parciales, la última dictada el 9 de octubre de 1996 y notificada el 23 de octubre de ese mismo año, el 25 de agosto de 1997, el tribunal dictó una orden al amparo de la Regla 39.2(b) de Procedimiento Civil. Mediante la misma, le dio término a las partes para que expusieran las razones por las cuales, habiendo transcurrido más de seis (6) meses sin que se efectuase trámite alguno, el tribunal no debiera desestimar el caso y decretar su archivo por inactividad. Esta orden se notificó sólo a la parte demandante. El 10 de septiembre la parte demandante compareció y adujo como excusa para la inactividad del caso, que las partes habían estado negociando la solución total del mismo. Añadió que la parte demandante ahora se encontraba evaluando una oferta de transacción para terminar el caso. **Esta moción se le notificó sólo a Isla que era la única parte con quien los demandantes estaban negociando la transacción.**

Así las cosas, el 5 de noviembre de 1997, el tribunal de instancia dictó sentencia al amparo de la Regla 39.2(b) desestimando el caso por inactividad. Expresó que "[l]as vagas referencias a una alegada oferta de transacción, no justifica[ba] mantener el caso en el calendario del tribunal." **La sentencia se notificó el 13 de noviembre a**

gananciales compuesta por ambos. Éstos eran los compradores posteriores del solar en controversia. El 6 de diciembre de 1995 el tribunal dictó sentencia parcial por desistimiento voluntario con perjuicio a favor de estos codemandados. El 9 de octubre de 1996 el foro de instancia dictó otra sentencia parcial esta vez desestimando la demanda en cuanto a Carlos Montull, Adrián Hileras, John Doe y Richard Doe.

**los demandantes y a los codemandados Isla, Vidal Farms y El Caño.[8]**

Inconforme con esta determinación, el 9 de diciembre de 1997, los demandantes presentaron escrito de apelación ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). **La apelación se notificó solamente a la codemandada** Isla. Con el escrito de apelación acompañaron dieciséis (16) **exhibits[9], entre los cuales incluyeron tres (3) planos sobre ofertas de transacción, todos ellos suscritos sólo por la codemandada Isla. Ninguno de estos planos fue presentado en el foro de instancia.**

El 12 de marzo de 1998, la codemandada apelada Isla, presentó ante el Tribunal de Circuito una moción informativa en la cual expresó que con respecto a la apelación no tenía planteamiento alguno que hacer y que deseaba informar que estaba preparada para proceder con la defensa del caso de ser éste reabierto. Nada mencionó con respecto a la falta de notificación del escrito de apelación a Vidal Farms y El Caño, ni a la necesidad de realizar dicha notificación, ni de las consecuencias por no hacerlo. **Isla notificó esta moción sólo al tribunal y a los demandantes.**

**De un análisis de los documentos que obran en los expedientes del caso a nivel de instancia y en el Tribunal de Circuito, surge con meridiana claridad, que ya para esta etapa de los procedimientos, la controversia, de facto, se**

---

[8]    Éstos eran los demandados que formalmente aún permanecían como partes en el caso.

**había limitado a uno sólo de los demandados, Isla. Cabe puntualizar que las negociaciones de transacción se llevaron a cabo sólo con Isla.**[10]

El 31 de marzo de 1998 el Tribunal de Circuito emitió una sentencia mediante la cual resolvió que en el caso de autos los demandantes no habían incurrido en un abandono total de la acción que justificase su desestimación. En vista de ello, revocó el dictamen del tribunal de instancia y devolvió el caso para que continuasen los procedimientos. La sentencia se le notificó sólo a los demandantes y a Isla.

El mandato fue remitido y el caso fue devuelto a instancia para que continuaran los procedimientos a tenor con lo resuelto. Luego de una serie de trámites procesales, incluyendo mociones de ambas partes relacionadas con el descubrimiento de prueba, ninguna de las cuales fue notificada a Vidal Farms o a El Caño, poco más de un año después de haberse devuelto el caso al tribunal de instancia, la representación legal de Isla, el Lcdo. Rafael E. Torres Torres, le informó al tribunal que al estudiar el expediente se percató que Vidal Farms y El Caño nunca fueron notificadas del escrito de apelación KLAN9701329 que dio lugar a la revocación de la sentencia desestimatoria de instancia. Cabe señalar, que el licenciado Torres Torres representó a Isla durante prácticamente todo este caso.[11]

---

[9] La mayor parte de estos exhibits eran mociones y resoluciones que obraban en los autos del caso en el tribunal.
[10] Ni Vidal Farms, ni El Caño, han alegado que fueron parte de estas negociaciones de transacción. Isla tampoco ha indicado que éstas fueran parte de las negociaciones.
[11] El Bufete Torres & Pérez Rivera al cual pertenece el Lcdo. Rafael E. Torres Torres comenzó a representar a Isla desde el 18 de julio de 1995. Entonces atendía el caso la Lcda. Lissette Toro Vélez. La primera comparecencia del licenciado Torres

El 9 de abril de 1999, poco más de un año después de haberse archivado el recurso de apelación en el tribunal apelativo y remitido el mandato, Isla presentó una moción dentro del mismo recurso (apelación KLAN9701329). Le solicitó al Tribunal de Circuito que pidiese al tribunal de instancia la devolución del mandato y que una vez recibido dictaminase la nulidad por falta de jurisdicción de la sentencia dictada por dicho foro apelativo el 31 de marzo de 1998. Esta fue la sentencia que revocó la emitida por el foro de instancia que a su vez había desestimado el caso por inactividad al amparo de la Regla 39.2. Confrontado con esta solicitud, el Tribunal de Circuito asumió nuevamente jurisdicción sobre el recurso de apelación. Acogió el planteamiento de Isla y el 8 de julio de 1999, dictó sentencia dejando sin efecto su sentencia del 31 de marzo de 1998 por ésta haber sido emitida sin jurisdicción. Fundamentó la falta de jurisdicción en el hecho de que el escrito de apelación no se le notificó a todas las partes, específicamente se omitió notificar a las codemandadas Vidal Farms y El Caño. Al remitir al tribunal de instancia el mandato, esta determinación tuvo el efecto de reactivar en dicho foro la sentencia desestimatoria emitida por este el 5 de noviembre de 1997.

De la nueva determinación del Tribunal de Circuito, los demandantes no solicitaron revisión ante esta Curia. Optaron por presentar una moción de relevo de sentencia al amparo de la Regla 49.2 ante el foro de instancia solicitando se dejara sin efecto la sentencia de dicho tribunal emitida el 5 de noviembre de 1997 que fuera reactivada por la sentencia de

Torres fue el 6 de diciembre de 1995, según consta en la minuta

8 de julio de 1999 del Tribunal de Circuito.  Isla se opuso a esta moción alegando que la misma había sido presentada tardíamente, o sea, fuera del plazo de seis (6) meses de haberse registrado la sentencia o llevado a cabo el procedimiento, según dispone la Regla 49.2.  El tribunal de instancia acogió este planteamiento y el 18 de octubre de 1999, denegó la solicitud de relevo de sentencia por haber sido presentada tardíamente.

Este dictamen fue revocado por el Tribunal de Circuito. El tribunal apelativo resolvió que el término para solicitar el relevo de sentencia en el foro de instancia comenzó a decursar el 8 de julio de 1999, fecha en que se dejó sin efecto la sentencia del Tribunal de Circuito que había revocado la sentencia desestimatoria del foro de instancia.  En consecuencia concluyó que la moción de relevo de sentencia fue presentada en tiempo, o sea dentro del plazo establecido por la Regla 49.2.  Inconforme, Isla acudió ante nos alegando en síntesis y como único error, que el Tribunal de Circuito erró al determinar que el término de seis (6) meses para solicitar el relevo de sentencia se contaba desde la fecha del registro de la sentencia dictada por el tribunal apelativo que dejó sin efecto su sentencia anterior y que, por lo tanto, reactivó la sentencia de instancia que desestimó el caso por inactividad al amparo de la Regla 39.2.

Pasemos ahora a esbozar la posición de la mayoría.

II. POSICIÓN DE LA MAYORÍA

---

de la conferencia sobre el estado de los procedimientos.

La mayoría sostiene que erró el Tribunal de Circuito al determinar que el término fatal de seis (6) meses que establece la Regla 49.2 para presentar una moción de relevo de sentencia, en el caso de autos comenzó a decursar a partir del 15 de julio de 1999. Ésta fue la fecha en que se archivó en autos copia de la sentencia de dicho foro apelativo que reactivó la sentencia de desestimación por inactividad dictada por el tribunal de instancia el 5 de noviembre de 1997 y notificada el 13 de ese mismo mes. Entiende la mayoría que el término de seis (6) meses que establece la Regla 49.2 comenzó a transcurrir cuando se registró la sentencia de desestimación por inactividad, el 13 de noviembre de 1997, y que por lo tanto, la moción de relevo de sentencia que está ante nuestra consideración fue presentada fuera del término fatal de seis (6) meses. De esto concluye, que actuó correctamente el tribunal de instancia al denegar el relevo de sentencia.

La mayoría utiliza básicamente dos fundamentos para apoyar su posición. Primero que la sentencia dictada por el Tribunal de Circuito el 31 de marzo de 1998, que revocó la sentencia del tribunal de instancia que desestimó la acción por inactividad, era nula por haberse dictado sin jurisdicción al no haberse notificado el escrito de apelación a El Caño y Vidal Farms que aún permanecían como partes demandadas en el caso.

De lo anterior, concluye la mayoría que la posición adoptada por el Tribunal de Circuito le atribuyó a esta sentencia nula el efecto de interrumpir, durante quince meses

y medio (15 1/2), el término de seis (6) meses de la Regla 49.2. Esto a su entender resulta insostenible, porque no se le puede atribuir a una sentencia que es nula, o sea, que es inexistente, efecto alguno.

Como segundo argumento, rechazan la contención de que el procedimiento a que se refiere la Regla 49.2 pueda ocurrir a nivel apelativo. Por lo tanto, la moción de relevo fue presentada tardíamente y siendo el término para presentarla uno fatal procedía denegarla.

Arguye además la mayoría que lo que se perseguía con la moción de relevo era realmente revisar la corrección de la sentencia de desestimación por inactividad. Agrega que esto sólo se podía hacer, en instancia, mediante la utilización de una moción de reconsideración y en alzada mediante la presentación ante el Tribunal de Circuito de un recurso de certiorari. De todo lo anterior concluye que se equivocó el foro apelativo al determinar que el mecanismo procesal utilizado, el de la moción de relevo, era el apropiado para lograr el relevo de los efectos de la sentencia de desestimación por inactividad.

De otra parte, el Juez Asociado señor Hernández Denton en su opinión de conformidad señala que la segunda sentencia emitida por el Tribunal de Circuito cambió radicalmente la situación procesal de las partes al dejar sin efecto su sentencia anterior. Por lo tanto, "[e]stos procedimientos [deben] evaluarse para poder precisar la norma justa que atendiera estas situaciones particulares." El Juez Hernández Denton está conforme con la conclusión a la cual llega la

mayoría, porque entiende que el segundo dictamen del Tribunal de Circuito mediante el cual se dejó sin efecto el que había revocado la sentencia desestimatoria del foro de instancia, no modificó sustantivamente la decisión apelada, la sentencia desestimando por inactividad. Entiende que esto tuvo el efecto de que la moción de relevo fuese presentada tardíamente.

Pasemos ahora a esbozar los principios de derecho procesal aplicables a la situación ante nuestra consideración.


III. PRINCIPIOS PROCESALES GENERALES

**A. FINALIDAD DE LAS SENTENCIAS Y DETERMINACIONES JUDICIALES**

El análisis de cualquier problema procesal en un caso en particular tiene que partir de la base de que una vez finalizado el caso o una etapa de éste o hecha una determinación por el tribunal, sin que la validez de estas actuaciones haya sido oportunamente impugnada mediante los mecanismos procesales apropiados, éstas, como regla general, no pueden ser cuestionadas **por las partes, en esa etapa del proceso.** Cabe señalar, sin embargo, que las determinaciones interlocutorias, que no hayan sido previamente revisadas en alzada, podrán ser revisadas por los tribunales apelativos una vez finalice el caso, si éstas afectan el resultado del mismo.

En cuanto a los tribunales de instancia, una vez registrada y notificada la sentencia, éstos pueden actuar para reconsiderar si alguna de las partes solicita, en tiempo, alguno

de los remedios post sentencia, o, claro está, si se trata de un error de forma y bajo las condiciones dispuestas en la Regla 49.1 de Procedimiento Civil.

Sin embargo, antes de que finalice el caso, esto es, antes de que se registre y notifique la sentencia, el tribunal, *sua sponte*, puede reconsiderar sus propias determinaciones si se convence que éstas son erróneas y pueden causar una grave injusticia. Reiteradamente hemos resuelto que a fines de velar por el trámite ordenado y la pronta solución de los litigios, así como por la estabilidad, finalidad y certeza de los procedimientos judiciales, un tribunal, como cuestión de sana práctica y no como regla inviolable, debe resistirse a alterar los procedimientos dentro de un mismo caso, salvo cuando se convenza de que los mismos son erróneos y pueden causar una grave injusticia. Nuñez Borges v. Pauneto Rivera, 130 D.P.R. 749, 755 (1992); Noriega v. Gobernador, 130 D.P.R. 905, 930-931 (1992); Torres Cruz v. Mun. De San Juan, 103 D.P.R. 217, 222 (1975).

**B. LA FUNCIÓN APELATIVA DE LOS TRIBUNALES**

En nuestro sistema judicial el funcionamiento del tribunal de instancia es distinto al del foro apelativo. Aún después de resuelto un caso, el tribunal de instancia conserva jurisdicción sobre éste para entender en una serie de asuntos procesales que podrían surgir post sentencia, tales como, las solicitudes de reconsideración,[12] de determinaciones de hechos

---

[12] A nivel apelativo también se tiene disponible la reconsideración dentro del término jurisdiccional establecido en la ley y los reglamentos.

adicionales o de nuevo juicio, la ejecución de sentencia, o el relevo de sentencia entre otros. De otra parte, en los foros apelativos, una vez éstos resuelven el recurso y remiten el mandato, como regla general, salvo en circunstancias excepcionales, pierden facultad para ordenar su devolución. La remisión procederá si trata de la corrección de meros errores clericales,[13] para evitar que ocurra una grave injusticia; o cuando la remisión de éste ha sido por fraude o error. Fuentes v. Aponte, 63 D.P.R. 759, 760 (1944); Vaillant v. Santander, 147 D.P.R. 338 (1998); Pueblo v. Tribunal de Distrito, 97 D.P.R. 241, 246 (1969). También, a manera de excepción, en auxilio de una apelación, el tribunal apelativo "tiene el poder de ordenar la devolución del mandato **porque al así hacerlo en ninguna forma interviene o altera la sentencia apelada.**" Fuentes v. Aponte, supra.

El mandato es el medio oficial que tienen los tribunales apelativos para comunicar al tribunal apelado o a la agencia administrativa apelada, la disposición que ha hecho de la sentencia o resolución que fue objeto de revisión y de ordenarle el cumplimiento con los términos de su actuación. Una vez recibido el mandato el tribunal apelado tiene que limitarse a darle cumplimiento a lo ordenado. Véase Regla 54.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III, Reglas 54.7 y 84(E) del Reglamento del Tribunal de Circuito de Apelaciones; 4 L.P.R.A. Ap. XXII-A.

---

[13] Lindsey v. Thigpen, 875 F2d 1509 (CA 11vo Circuit 1989); Fine v. Belefonte Underwriters, Ins., 758 F2d 50 (CA 2nd Circuit 1985); Wright, Miller & Cooper, Federal Practice and Procedure, 2da ed. Vol. 16 Sec. 3938, págs. 712-736 (1996).

Los tribunales de Puerto Rico constituyen un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración. Art. V, Sec. 2 de la Constitución del Estado Libre Asociado de Puerto Rico. Ahora bien, dentro del esquema organizacional judicial los foros de instancia y apelativos tienen funciones distintas, siendo la de los apelativos una limitada dirigida primordialmente a la revisión de las determinaciones, finales o interlocutorias, de los tribunales de menor jerarquía o las finales de los foros administrativos. A manera de excepción, también pueden resolver aquellos casos en jurisdicción original que la Constitución o las leyes les han encomendado. Con respecto a su función apelativa, una vez resuelto el recurso que está ante su consideración, ya fuere éste uno de apelación, revisión o certiorari, y remitido el mandato, como regla general el foro apelativo pierde jurisdicción sobre el caso. O sea, no conserva facultad para continuar entendiendo en el asunto, carece de jurisdicción sobre la materia para reconsiderar o alterar su dictamen. Vaillant v. Santander, supra; Pueblo v. Tribunal de Distrito, supra; Fuentes v. Aponte, supra. Puede, como ya expresamos, bajo circunstancias excepcionales, a solicitud de parte o sua sponte, solicitar la devolución del mandato y asumir nuevamente jurisdicción sobre el caso.

Los errores que pueda haber cometido un tribunal apelativo, como regla general, se pueden corregir mediante la oportuna presentación de una solicitud de reconsideración o una solicitud de certiorari a un tribunal de mayor jerarquía si se

trata de un tribunal apelativo intermedio.[14]  Con las excepciones previamente indicadas, los procedimientos o incidentes que puedan surgir con posterioridad a la remisión del mandato, usualmente son atendidos por el foro de instancia, cuyas determinaciones a su vez, pueden luego ser revisadas por los foros apelativos mediante recursos distintos al ya resuelto, aunque se trate del mismo caso.

## C. JURISDICCIÓN DE LOS TRIBUNALES – PRINCIPIOS GENERALES

Con relación a los tribunales en general hemos expresado que éstos **"tienen el ineludible deber de auscultar su propia jurisdicción [y que] los tribunales apelativos, además, deberán examinar la jurisdicción del foro [o foros] de donde procede el recurso... el planteamiento de falta de jurisdicción sobre la materia puede hacerse en cualquier etapa del procedimiento por cualquiera de las partes o por el tribunal *motu proprio*."** Vázquez v. A.R.P.E., 128 D.P.R. 513, 537 (1991); López Rivera v. AFF, 89 D.P.R. 414, 419 (1963).

Respecto a la jurisdicción sobre la persona y a la jurisdicción sobre la materia y al balance que hay que realizar entre la validez y la finalidad de los pronunciamientos judiciales, los distinguidos comentaristas de derecho procesal, Wright, Miller y Cooper han expresado lo siguiente:

[I]t now is held that **if a party appears before a court to contest its in personam jurisdiction, an explicit finding that the jurisdiction exists will bind the party and he cannot later collaterally attack that court's judgment on the basis**

---

[14]  Bajo ciertas circunstancias algunos casos pueden ser revisados por el Tribunal Supremo de Estados Unidos.

**of court's lack of personal jurisdiction**. The finding of jurisdiction is considered to be res judicata of the issue.

More difficult theoretical problems are encountered when the question relates to a court's subject matter jurisdiction. **The rule has been that the court's determination that it has subject matter jurisdiction is res judicata of the issue, if the jurisdictional question was litigated and expressly decided and full faith and credit must be given to the judgment, this is true, even if the court is mistaken on its decision.**[15] (Énfasis suplido.)

También hemos resuelto que las cuestiones de jurisdicción por ser privilegiadas deben ser resueltas con preferencia, y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo", no puede entrar a resolver en los méritos. Autoridad Sobre Hogares v. Sagastivelza, 71 D.P.R. 436, 439 (1950); González Santos v. Bourns P.R., Inc., 125 D.P.R. 48, 63 (1989); Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314 (1997).

También hemos establecido que una vez el foro apelativo resuelve el caso y lo devuelve remitiendo el mandato para que continúen los procedimientos, las determinaciones del tribunal apelativo controlan los procedimientos ulteriores. Tartak v. Tribunal de Distrito, 74 D.P.R. 862, 869 (1953).

Las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones consideradas y decididas y dichas determinaciones, como regla general, obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve ante su consideración. Ahora bien, si el caso, **mediante los mecanismos apropiados**, vuelve ante la consideración del

---

[15] Wright, Miller and Cooper, Federal Practice and Procedure, Vol. 13A, sec. 3536, págs. 536-538, West Pub., 1984. Véase, además: Moore, "Collateral Attak on Subject matter Jurisdiction: A Critique of the Restatement (Second) of Judgments", 60 Cornell L. Rev. 534-563.

tribunal apelativo y éste entiende que sus determinaciones previas son erróneas y pueden causar grave injusticia, dicho foro puede aplicar una norma de derecho distinta y resolver así de forma justa. Noriega v. Gobernador, supra, pág. 931; Pueblo v. Lebrón Lebrón, 121 D.P.R. 154, 159 (1998); Don Quixote Hotel v. Tribunal Superior, 100 D.P.R. 19, 29-30 (1971). El mismo caso podría volver ante la consideración del tribunal apelativo cuando, por ejemplo, lo resuelto fue una cuestión interlocutoria y el caso fue devuelto para que continuasen los procedimientos; o aún cuando se tratara de una sentencia, el nuevo asunto dentro del mismo caso tiene que ver con alguna determinación del foro de instancia relacionada con algún remedio post sentencia o con la ejecución de la sentencia. A nivel apelativo el caso tendría otro número por ser un asunto y recurso distinto el que se está trayendo ante la consideración de dicho foro, aunque se trate del mismo caso.

**D. LA FALTA DE JURISDICCIÓN SOBRE LA MATERIA, LA FALTA DE JURISDICCIÓN SOBRE LA PERSONA, EL DEBIDO PROCESO DE LEY Y LA NULIDAD DE LA SENTENCIA**

La falta de jurisdicción sobre la materia puede levantarse en cualquier etapa de los procedimientos, por cualquiera de la partes o por el tribunal motu proprio. Vázquez v. A.R.P.E., supra, a la página 537. Según expresáramos, "[u]na vez el tribunal determina que no tiene jurisdicción sobre la materia, viene obligado a desestimar el caso." Pagán v. Alcalde Mun. de Cataño, supra, a la página 326. En lo que respecta a los tribunales apelativos, pasado el término improrrogable para presentar una reconsideración o un recurso de certiorari o una apelación, según fuere el caso, y remitido el mandato, como

regla general, los tribunales apelativos carecen de jurisdicción para reconsiderar sus dictámenes. Claro está, bajo circunstancias excepcionales o cuando se trate de meros errores clericales, podrían solicitar la devolución del mandado y asumir jurisdicción sobre el caso nuevamente.

En cuanto al relevo de una sentencia por alegada falta de jurisdicción sobre la materia, hemos destacado que existen dos mecanismos procesales para lograr el relevo y que la Regla 49.2 alude a ambos. El primero es mediante la presentación de una moción de relevo dentro del mismo caso no más tarde del término fatal de seis (6) meses siguientes al registro de la sentencia u orden o de haberse llevado a cabo el procedimiento. Ahora bien, si la cuestión jurisdiccional fue cuestionada y adjudicada en el pleito, una vez transcurrido este término de seis (6) meses, la parte afectada por la sentencia que considera nula por falta de jurisdicción sobre la materia, sólo en muy limitadas ocasiones podrá atacar dicho dictamen en un pleito colateral independiente.[16] Los fundamentos que se utilicen en apoyo de este ataque colateral a la sentencia tienen que ser unos que no se pudieron haber utilizado en apelación para lograr la revocación de la sentencia. <u>Bell</u> v. <u>Eastman Kodak Co.</u>, 214 F3d 798, 801 (7th Cir. 2000). No obstante, estos ataques colaterales se permitirán si el error jurisdiccional fue uno craso o "atroz" ("egregious"). En otras palabras, si la situación resulta ser una clara usurpación de poder por parte del tribunal. <u>In re Edwards</u>, 962 F2d 641, 644 (7th Cir. 1992);

---

[16] Restatement (second) of Judgments; Wright, Miller and Cooper, <u>supra</u>; Moore, <u>supra</u>.

<u>U.S.</u> v. <u>Tittjung</u>, 235 F3d 330, 335 (7th Cir. 2000); <u>Kocher</u> v. <u>Dow Chemical Co.</u>, 132 F2d 1225, 1230 (8th Cir. 1997).[17]

No prosperará una acción independiente impugnando una sentencia por nulidad por falta de jurisdicción sobre la persona, si este asunto se litigó y adjudicó expresamente en el pleito anterior, aunque al comparecer la parte haya indicado que estaba haciendo una "comparecencia especial sin someterse a la jurisdicción del tribunal." Esto es así aunque dicha determinación esté equivocada. A una parte no se le va a permitir litigar el planteamiento jurisdiccional en dos ocasiones. El remedio que la parte tiene para corregir el error es solicitar la revisión de la determinación jurisdiccional en alzada, ante un tribunal apelativo. Tampoco prosperará una acción colateral independiente de nulidad de sentencia, si pudiendo haber litigado la falta de jurisdicción sobre la persona en el caso anterior la parte optó por no hacerlo. Wright, Miller and Kane, <u>Federal Practice and Procedure</u>, Civil 2nd, sec. 2862, pág. 331, West Pub. 1995; <u>Bell</u> v. <u>Kodak Eastman</u>, <u>supra</u>; <u>Nemaizer</u> v. <u>Baker Co.</u> 793 F2d 58, 61 (2nd Cir. 1986).

De otra parte, si se trata de la falta de notificación en tiempo a una parte o al tribunal apelado o a la agencia apelada, según fuere el caso, de un recurso presentado, se estaría ante

---

[17] Para lograr un adecuado balance entre la norma de que sólo las determinaciones de los tribunales con jurisdicción sobre la materia y sobre la persona deben hacerse valer, (norma de la validez), y aquella que aboga por la finalidad y estabilidad de las decisiones judiciales, (norma de la finalidad), los tribunales federales y la mayor parte de los estatales han establecido la siguiente norma: no prosperará una demanda de nulidad por falta de jurisdicción sobre la materia, si la parte que trae la acción litigó este planteamiento en el caso que produjo la sentencia que ahora está impugnando o si pudiendo

una actuación inconsistente con el debido proceso de ley ("in a manner inconsistent with due process of law"), no ante un problema jurisdiccional. Wright, Miller and Kane, supra, sec. 2862, págs 329-331. Esto es así, aunque de inmediato, en el caso de que se trate, podría producirse una falta de perfeccionamiento del recurso dentro del término jurisdiccional dispuesto por ley. Para propósitos de nulidad de sentencia estamos ante una falta de debido proceso de ley en el trámite procesal del caso, que sólo en circunstancias donde efectivamente se afecte el derecho de la parte, podría conllevar la nulidad de la sentencia. Al analizar esta situación hay que utilizar los criterios de equidad. Obviamente la posible nulidad de la sentencia no es de la misma naturaleza que las previamente discutidas, o sea, la falta de jurisdicción sobre la materia o la falta de jurisdicción sobre la persona por la falta de emplazamiento.

Aunque de naturaleza distinta, la falta de notificación se asemeja a la falta de jurisdicción sobre la persona, ya que ambos procedimientos persiguen el propósito de darle conocimiento a una parte sobre algún procedimiento judicial que pudiera afectarla para que ésta pueda comparecer y defenderse si así lo desea. Sin embargo, el efecto procesal de la falta de notificación de la presentación de un recurso apelativo a una parte que ya está válidamente en el pleito, o sea que ha sido debidamente emplazada, no puede tener el mismo alcance, ni el análisis de la situación puede ser igual al que se hace cuando

---

hacer la impugnación se cruzó de brazos y no trajo el problema jurisdiccional a la atención del tribunal.

se está frente a una falta de jurisdicción sobre la persona por falta de emplazamiento.

Estamos ante una norma que emana del debido proceso de ley en el trámite interno del caso. Habiendo transcurrido el término para utilizar los mecanismos procesales que se tienen disponibles para solicitar la revisión de la actuación u omisión equivocada, para que este incumplimiento amerite la aplicación del remedio extraordinario de relevo de sentencia, es necesario que haya afectado adversamente a la parte que solicita el remedio. Después de todo, estamos ante una posible falta de debido proceso de ley en el trámite interno del caso, que emana de las normas de equidad. Los procedimientos no tienen vida propia o fin propio, su razón de ser es asegurarle a las partes que se cumpla con el debido proceso de ley en la consecución ante los tribunales del derecho sustantivo reclamado por éstas. Si el procedimiento de que se trata, ya ha perdido su razón de ser, si no sirve propósito alguno, no debe implantarse, simplemente porque existe. Las normas procesales hay que interpretarlas de forma tal que se logre su propósito básico: obtener un adecuado balance entre el promover la estabilidad y finalidad de la determinaciones judiciales, preservar las decisiones dictadas con autoridad y el lograr la obtención de una solución justa, rápida y económica de la controversia.

Con relación a la falta de notificación de un recurso que ha sido presentado ante un tribunal apelativo, esto significa que si la falta de notificación no es traída en tiempo ante la consideración del tribunal y confiando en la corrección de los procedimientos, el caso prosigue su curso culminando finalmente

en la emisión de una sentencia, resulta obvio que esta no podrá ejecutarse contra la parte que por no haber sido notificada podría quedar afectada. Esto es así ya que dicha parte al no ser notificada quedó desprovista de su derecho a defenderse. Se le violentó el debido proceso de ley. La sentencia que se dicte no podrá afectarla. Esto no necesariamente significa que la sentencia no podría surtir efecto y hacerse valer en cuanto a otras partes que sí fueron notificadas, participaron activamente en el proceso y se cruzaron de brazos y dejaron transcurrir todos los términos para solicitar los remedios apropiados para traer ante el tribunal la falta de notificación. La ejecución de la sentencia contra estas partes podrá llevarse a cabo, siempre y cuando, en nada afecte a las partes que no fueron notificadas. Este tipo de situación requiere se haga un detallado análisis de los hechos y un fino balance entre los principios cardinales procesales que entran en juego: el otorgarle estabilidad y finalidad a las decisiones de los tribunales, el derecho de las partes a tener una oportunidad de defenderse y el velar por que los tribunales cumplan con los preceptos jurisdiccionales y de equidad que exige el debido proceso de ley.

**E. RELEVO DE SENTENCIA – REGLA 49.2**

El mecanismo procesal que se tiene disponible para solicitarle al foro de instancia el relevo de los efectos de una sentencia esta regulado por la Regla 49.2. Esta Regla proviene de la Regla 60 (b) de Procedimiento Civil Federal. Es un remedio extraordinario discrecional. Hernández Colón, _Práctica Jurídica de Puerto Rico_, Cap. 48, págs. 302–311,

Michie, 1997.  En Ortiz Serrano v. Ortiz Díaz, 106 D.P.R. 445, 449 (1977), expresamos que dicha Regla establece "un mecanismo procesal post sentencia para impedir que tecnicismos y sofisticaciones frustren los fines de la justicia.  Nada es más frustrante para el logro de ese propósito que negar a una parte su día en corte."  En Dávila v. Hosp. San Miguel, Inc., 117 D.P.R. 807, 817 (1986), hicimos hincapié en que al presentarse una moción de relevo al amparo de los incisos (1), (5) o (6) de la Regla 49.2, "el tribunal de[bía] hacer un análisis y balance racional y justiciero **de todo el expediente del caso para determinar si bajo las circunstancias específicas del caso hubo** '*[e]rror, inadvertencia, sorpresa, o negligencia excusable*' o '*no sería equitativo que la sentencia continuara en vigor*' o existe '*[c]ualquier ... razón que justifique la concesión de remedio contra los efectos de una sentencia.*'"

También hemos resuelto que la Regla 49.2 debe "interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una anotación de rebeldía o una sentencia, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos." Díaz v. Tribunal Superior, 93 D.P.R. 79, 87 (1966).  En armonía con lo anterior hemos resuelto que si se da alguna de las situaciones esbozadas en la Regla 49.2 se puede considerar una moción de reconsideración como una de relevo aún pasado el término para presentar una moción de reconsideración.  Cabe señalar, sin embargo, que no se puede utilizar una moción de relevo como sustituto de un recurso de revisión o de una moción de reconsideración.  Pagán v. Alcalde Mun. de Cataño, supra, pág.

328; <u>Olmedo Nazario</u> v. <u>Sueiro Jiménez</u>, 123 D.P.R. 294, 299 (1989); Cuevas Segarra, <u>supra</u>, págs. 783–799.

El apartado (1) de la Regla 49.2 dispone que se podrá relevar a una parte de una sentencia cuando haya mediado "[e]rror, inadvertencia, sorpresa o negligencia excusable." De otra parte el apartado (5) entre otras cosas dispone que se puede relevar a una parte de los efectos de una sentencia cuando la sentencia anterior en que se funda "ha sido revocada o de otro modo dejada sin efecto, o **no sería equitativo que la sentencia continuara en vigor**." (Énfasis suplido.) Con relación a este apartado el comentarista Moore observa que para que sea de aplicación, la sentencia anterior tiene que ser necesaria para la segunda sentencia. Expresa Moore: "**Thus, the prior judgment must be a necessary element of the second .... the rule is limited to cases in which the present judgment** is based on the prior judgment." Moore, <u>supra</u>, sec. 26.45[2], págs. 26–43. (Énfasis suplido.)

En lo que respecta el inciso (6) de la Regla 49.2 el respetado procesalista Moore expresa que este inciso le da a un tribunal amplios poderes en equidad para hacer justicia cuando existan circunstancias extraordinarias en un caso en particular que ameritan el ejercicio de esta facultad. Dicho comentarista indica que el inciso (6) es una disposición que recoge cualquier situación no prevista, un "catch all". Comenta que "there must always be an articulate valid reason justifying the relief from a judgment." Moore, <u>supra</u>, sec. 2646, págs. 26–46. Los procesalistas Wright, Miller y Kane por su parte expresan que esta disposición le concede amplios poderes al

tribunal para dejar sin efecto una sentencia cuando las circunstancias del caso así lo ameritan para hacer justicia. Wright, Miller y Kane, _supra_, sec. 2864, págs. 350-355.

Finalmente quisiéramos recordar que cualquier análisis que hagamos en relación con la validez de una sentencia o resolución tiene que tomar en consideración el hecho de que un defecto en la solicitud del remedio o suplica, no será óbice para que el tribunal conceda el remedio que en derecho proceda de acuerdo con las alegaciones y la prueba. Regla 70 de Procedimiento Civil.

Tomando en consideración las normas procesales previamente discutidas, pasemos a analizar la aplicación de éstas a los hechos particulares del caso de autos.

IV. APLICACIÓN DEL DERECHO A LOS HECHOS

Una serie de errores procesales, cometidos tanto por las partes como por el tribunal de instancia y el Tribunal de Circuito han convertido un caso relativamente sencillo en una verdadera pesadilla que tendrá como desenlace una grave injusticia ("miscarriage of justice"). El tortuoso camino procesal comenzó cuando los demandantes, al ser requeridos por el tribunal de instancia para que al amparo de la Regla 39.2 mostraran causa por la cual no se debía desestimar el caso por inactividad, presentaron una escueta moción indicando que habían estado negociando una posible transacción con los demandados y que estaban en el proceso de evaluar la última oferta. No especificaron en que consistían las negociaciones, ni acompañaron con la moción

documento alguno. Tampoco indicaron que todas las negociaciones las estaban llevando a cabo sólo con la codemandada Isla, que ésta era la única codemandada contra la que se interesaba obtener un remedio y que por sus actuaciones, así aparentemente lo entendía Isla también. Se limitaron a solicitar se les permitiera terminar de evaluar la última oferta de transacción y que de no lograr transigir el caso se señalara el mismo para vista en su fondo. La orden del tribunal para mostrar causa, dictada al amparo de la Regla 39.2 sólo se le notificó a los demandantes.

El 5 de noviembre de 1997 el foro de instancia dictó sentencia desestimando la acción por inactividad. Ésta fue notificada a todas las partes el 13 de ese mismo mes. Los demandantes, en vez de solicitar el relevo de dicha sentencia, acompañando su moción con los documentos que avalaran su aseveración de que habían estado activamente negociando con la codemandada Isla para transigir el caso,[18] optaron por apelar la sentencia. Acompañaron el escrito de apelación con dieciséis (16) documentos,[19] entre los cuales incluyeron tres (3) planos que contenían las ofertas de transacción hechas por Isla. Éstos nunca fueron presentados al foro de instancia. De éstos surge, con meridiana claridad, que

---

[18] En las circunstancias particulares de este caso, difícilmente hubiese prosperado una moción de reconsideración, ya que aparte de la escueta alegación de los demandantes de que habían estado negociando activamente para lograr una transacción, en el expediente no había documento alguno que apoyara esta aseveración y le permitiese al foro de instancia reconsiderar su determinación de desestimar el caso por inactividad.

[19] La mayor parte de estos documentos eran copias de mociones y resoluciones de los trámites procesales habidos en el caso.

efectivamente los demandantes habían estado negociando activamente con Isla para transigir el caso.[20]

**El escrito de apelación se le notificó sólo a Isla y claro está al tribunal apelado**. Isla, a pesar de haber sido informada de esta falta de notificación a todas las partes, compareció sólo para indicar que no tenía planteamiento alguno que hacer en cuanto a la apelación de los demandantes y que estaba preparada para proceder con la defensa del caso si éste se reabría. Nada mencionó sobre la falta de notificación a las otras dos codemandadas, El Caño y Vidal Farms, que técnicamente aún permanecían como partes demandadas en el pleito. De esta forma Isla tácitamente reconoció que realmente ella era la única codemandada con verdadero interés en el caso. Así las cosas, el 31 de marzo del 1998, el Tribunal de Circuito dictó sentencia revocando la emitida por el foro de instancia el 5 de noviembre de 1997, que había desestimado el caso por inactividad. Esta sentencia sólo se le notificó a Isla. Isla no solicitó ni la reconsideración al Tribunal de Circuito, ni la revisión al Tribunal Supremo.

El Tribunal de Circuito remitió el mandato, archivó el caso y lo devolvió a instancia para que continuasen los procedimientos de forma consistente con lo resuelto. **Los procedimientos continuaron, llevándose a cabo pero sólo entre los demandantes e Isla. Ni a Vidal Farms, ni a El Caño, se le volvió a notificar documento alguno, ni por el tribunal**

**ni por Isla o los demandantes.** Los demandantes tampoco solicitaron formalmente desistir de su reclamación contra Vidal Farms y El Caño, ni Isla trajo a la atención del foro de instancia la falta de inclusión y participación en esta etapa de los procedimientos de las codemandadas Vidal Farms y El Caño. Tanto Isla como los demandantes simplemente ignoraron la existencia de Vidal Farms y El Caño como codemandados. Aparentemente los demandantes entendían que ya no tenían reclamación alguna contra estas codemandadas, y de otra parte Isla parecía entender que sería ella la que le pudiera tener que responder por las reclamaciones de los demandantes. Así, con sólo los demandantes e Isla, prosiguió el pleito en instancia, hasta que, poco más de un año después de haberse dictado por el Tribunal de Circuito la sentencia revocatoria y devuelto el caso al foro de instancia, Isla compareció ante el Tribunal de Circuito dentro del mismo recurso de apelación que había sido previamente resuelto y archivado. Pretendió reabrir el caso a nivel apelativo mediante la presentación de una moción en la que simplemente alegó de que acababa de darse cuenta de la falta de notificación del escrito de apelación a todos los demandados.[21] Se refería a que se había omitido notificar a Vidal Farms y a El Caño. Le solicitó al tribunal apelativo

---

[20] Del expediente de instancia surge que El Caño y Vidal Farms hicieron muy pocas comparecencias a través de la litigación de este caso.

[21] Esta aseveración denota una crasa negligencia en la forma de atender un caso de parte de la representación legal de Isla, el licenciado Torres Torres, quien desde el 1995 atendía personalmente dicho caso.

que reclamase la devolución del mandato y volviese a asumir jurisdicción sobre el recurso de apelación previamente resuelto y que luego procediese a relevarlo de los efectos de la sentencia dictada por dicho foro poco más de un año antes, el 31 de marzo de 1998. De esta sentencia no había solicitado ni reconsideración ni revisión. Lo antes expuesto refleja una crasa e inexcusable negligencia de parte de Isla al plantear tan tardíamente la falta de notificación del escrito de apelación a las codemandadas El Caño y Vidal Farms, cuando ella estaba conciente, o debió de haber estado conciente de este hecho desde que el mismo sucedió. También denota un craso desconocimiento de los trámites apelativos.

El Tribunal de Circuito acogió el planteamiento de Isla y procedió a dejar sin efecto la sentencia que había dictado hacía poco más de un año, mediante la cual había revocado la sentencia del tribunal de instancia que desestimó el caso por inactividad. Los demandantes, en vez de solicitar la revisión ante el Tribunal Supremo de esta nueva sentencia del Tribunal de Circuito, optaron por aceptar esta determinación y regresar a instancia en busca de un remedio. En instancia solicitaron que al amparo de la Regla 49.2 se les relevara de los efectos de la sentencia reactivada, la que había desestimado el caso por inactividad, o sea, atacaron la validez de la sentencia desestimatoria. Con la moción no acompañaron documento alguno. Sin embargo, hay que tomar en consideración que en esta etapa de los procedimientos, en el

---

Cabe señalar que luego de la comparecencia de Isla, Vidal Farms y El Caño también comparecieron ante el Tribunal de Circuito e hicieron señalamientos similares a los de Isla.

expediente de instancia constaban los tres (3) planos que contenían las ofertas de transacción de Isla. Éstos se habían acompañado como parte de la copia del escrito de apelación, que se le había notificado a dicho tribunal. Los demandantes no atacaron la validez de la sentencia del Tribunal de Circuito que había reactivado la sentencia desestimatoria, a pesar de que ésta última dependía de la otra para su existencia.

Es ante este estado procesal algo convulsionado que el tribunal de instancia decide que la solicitud de relevo de la sentencia que desestimó el caso por inactividad fue presentada tardíamente. Entendió que el término fatal de seis (6) meses que establece la Regla 49.2 comenzó a decursar cuando se registró la sentencia de desestimación por inactividad, el 5 de noviembre de 1997. Inconforme con esta determinación los demandantes recurrieron nuevamente ante el Tribunal de Circuito. Éste revocó a instancia determinando que el término para presentar la moción de relevo comenzó a decursar cuando se notificó la segunda sentencia del Tribunal de Circuito que dejó sin efecto la primera y por ende reactivó la sentencia de desestimación por inactividad. Como fundamento alterno para su decisión, resolvió que era a esta segunda sentencia a la que se refería la Regla 49.2 cuando disponía que el término comenzaba a discurrir después de haberse llevado a cabo "el procedimiento". Esta es la situación procesal con la que hoy nos confrontamos.

Primero que nada quisiéramos dejar claramente establecido que estamos de acuerdo con la mayoría en que el

segundo fundamento utilizado por el Tribunal de Circuito en apoyo a su determinación de que la moción de relevo fue presentada en tiempo, no procede. El procedimiento a que se refiere esta Regla 49.2 no es el que ocurre en alzada, es uno que ocurre en instancia. También estamos de acuerdo en que bajo circunstancias excepcionales y extraordinarias un tribunal apelativo puede reclamar la devolución de un mandato y reasumir jurisdicción sobre un caso.

Pasemos ahora a analizar detenidamente la situación procesal en el caso de autos a la luz de las normas de derecho procesal antes expuestas.

Distinto a lo esbozado en la opinión mayoritaria, entendemos que en este caso no están presentes **las circunstancias excepcionales y extraordinarias** que se requieren para que un tribunal apelativo pueda válidamente reclamar la devolución del mandato y reasumir jurisdicción sobre un caso. Estamos claramente ante un error de debido proceso de ley cometido durante la tramitación de un caso. Se trata de la falta de notificación a unas partes, El Caño y Vidal Farms, de la presentación de un escrito de apelación ante el foro apelativo cuando, como cuestión de hecho, ya éstas partes habían cesado de tener interés en el caso; y por lo tanto, en forma alguna quedarían afectadas por la continuación del mismo o por su disposición final.

Hemos examinado con gran detenimiento los expedientes de instancia y del tribunal apelativo, y no nos cabe duda que efectivamente no se le notificó el escrito de apelación ni a Vidal Farms ni a El Caño. Tampoco nos cabe duda que aunque

técnicamente éstas aún eran partes en el pleito, contra ellas no existía en esta etapa de los procedimientos realmente una reclamación. Una vez devuelto el caso a instancia los procedimientos continuaron entre los demandantes e Isla, sin que la intervención de Vidal Farms y El Caño fuese necesaria. Es más, la ausencia de estas codemandadas aparentemente ni siquiera fue notada por los demandantes e Isla. Isla tardó más de un año en percatarse de que éstas no estaban siendo consideradas como partes en el pleito. Bajo estas circunstancias, aunque con la notificación del escrito de apelación a estas partes sí hubiera cumplido con un requisito procesal técnico, su incumplimiento ya había dejado de tener importancia, toda vez que dicha falta de notificación no podía en equidad, producir una violación del debido proceso de ley, ni la nulidad de la determinación del tribunal apelativo.

De lo anteriormente expresado surge con meridiana claridad que los problemas procesales que hoy confrontan los demandantes, aunque se originaron con una omisión procesal de su parte, el no haberle notificado a Vidal Farms y a El Caño el escrito de apelación, decididamente se agravaron por la selección poco acertada de los mecanismos procesales que tenían a su disposición para reclamar sus derechos y los errores de tipo jurisdiccional cometidos por el tribunal apelativo.

Primero que nada quisiéramos reiterar que los tribunales concederán el remedio que en derecho procede que puede o no ser el que las partes solicitan. En el caso de autos la moción de relevo la debieron haber basado en el inciso (6) de la Regla

49.2, que dispone que el tribunal podrá conceder el relevo de una sentencia por "cualquier otra razón que justifique la concesión de un remedio." Debemos tener presente que esta regla debe interpretarse liberalmente y cualquier duda se debe resolver a favor del que solicita el relevo de sentencia. Estamos ante una disposición cuya función es viabilizar la consecución de la justicia. En otras palabras, el uso apropiado de esta regla evita el que tecnicismos procesales produzcan una injusticia.

Pasemos ahora a auscultar si la moción de relevo al amparo de la Regla 49.2(6) se presentó en tiempo. Veamos. La "razón que justifi[ca] la concesión de un remedio contra los efectos de una sentencia", Regla 49.2(6), en el caso de autos, no ocurrió hasta que el tribunal apelativo asumió, indebidamente, jurisdicción nuevamente sobre el recurso de apelación que previamente había resuelto. Entonces procedió a dictar sentencia el 8 de julio de 1999 mediante la cual dejó sin efecto la previamente emitida el 31 de marzo de 1998, y desestimó el recurso de apelación. El 15 de julio de 1999 remitió el mandato al foro de instancia. **En cumplimiento de ese mandato es que en instancia se lleva a cabo el procedimiento de reactivar la sentencia de desestimación por inactividad, lo que a su vez motiva la presentación de la moción de relevo que es objeto de esta revisión.** Antes de que ocurriesen estos eventos procesales en instancia no había necesidad de solicitar relevo de sentencia alguno, **ni había razón que justificara la concesión de un remedio contra los efectos de una sentencia.** Por lo tanto, no podía haber

comenzado a decursar el término que establece la Regla 49.2 para solicitar el relevo, que no se necesitaba, de los efectos de una sentencia. A una parte no se le puede exigir que solicite lo que no es necesario, ni se le puede penalizar porque no lo hizo.

Tomando en consideración que un tribunal debe otorgar el remedio que proceda en derecho no el que se le solicita, Regla 70, entendemos que bajo los hechos particulares de este caso procedía una moción de relevo de sentencia al amparo de la Regla 49.2(6) y que ésta no se presentó tardíamente, ya que los procedimientos que dieron base a la necesidad de solicitarla no ocurrieron en instancia hasta el 15 de julio de 1999, fecha en que se remitió el mandato en relación con la segunda sentencia emitida por el Tribunal de Circuito el 8 de julio de 1999 y que en instancia reactivó la sentencia de desestimación por inactividad.

Por las razones antes expuestas disentimos de la mayoría en este caso. Por fundamentos distintos entendemos, que en bien de la justicia, la sentencia emitida por el Tribunal de Circuito debe ser confirmada y el caso devuelto al foro de instancia para que continúen los procedimientos de forma compatible con lo aquí resuelto, de forma tal que el caso pueda ser resuelto en los méritos y no a base de tecnicismos procesales.


**Miriam Naveira de Rodón**
**Juez Asociada**