ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **ASOCIACIÓN DE RESIDENTES DE URBANIZACIÓN VISTA REAL DE YAUCO, INC.**<br><br>Apelado<br><br>v.<br><br>**WILLER VÉLEZ QUIÑONES; MELANIE FRANCESKA LÓPEZ TORRES**<br><br>Apelante | KLAN202500024 | **Apelación** acogida como *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **Ponce**<br><br>Civil Núm.: **YU2023CV00068**<br><br>Sobre: Interdicto Preliminar y Permanente; Sentencia Declaratoria (Servidumbres en Equidad) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Campos Pérez.

Cintrón Cintrón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de mayo de 2025.

Comparecen el Sr. Willer Vélez Quiñones y la Sra. Melanie F. López Torres (en conjunto "demandados" o "peticionarios") ante este foro intermedio y nos solicitan que revisemos la *Resolución Interlocutoria* notificada el 24 de noviembre de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Ponce. Mediante el referido dictamen, el TPI declaró *No Ha Lugar* a la solicitud de relevo de sentencia incoada por los peticionarios.

Ahora bien, a pesar de que se instó un recurso de apelación, acogemos el mismo como *certiorari,* toda vez que se recurre de una solicitud de remedio *postsentencia.* Sin embargo, se mantendrá el mismo alfanumérico asignado por la Secretaría de este Tribunal de Apelaciones por cuestiones de economía procesal.

Por los fundamentos que expondremos a continuación, se deniega la expedición del recurso de certiorari.

Número Identificador

RES2025 _____

**I.**

Según surge del expediente, la controversia del presente caso tiene su origen allá para el 15 de febrero de 2023, cuando la Asociación de Residentes de la Urbanización Vista Real de Yauco, Inc. (en adelante "Asociación" o "recurrida") incoó una demanda contra los aquí peticionarios sobre interdicto preliminar y permanente, sentencia declaratoria y servidumbres en equidad. En la demanda se alegó que, el solar perteneciente a los demandados, estaba gravado por la Escritura Núm. 130 sobre condiciones restrictivas de la Urbanización Vista Real de Yauco. Se manifestó además que estos tenían la obligación de someter los planos, permisos y especificaciones de construcción de la residencia a construir para la aprobación del Comité Arquitectónico. Ello debido a que, conforme al referido instrumento público, solo se podía construir una de las residencias previamente diseñadas para la urbanización. Por ello, requirió que se emitiera una orden de entredicho provisional para que los peticionarios cesaran y desistieran sobre los trabajos de construcción, hasta tanto sometieran los documentos pertinentes al Comité Arquitectónico para su debida evaluación y aprobación. A su vez, solicitó que, en la medida que la residencia fuese distinta a las previamente diseñadas, los demandados modificaran los planos y permisos, de forma que cumplieran con las condiciones restrictivas.

Luego de varias incidencias procesales y evaluadas las posturas de las partes, el 22 de agosto de 2023, notificada el 24 de agosto de 2023, el TPI emitió la *Sentencia* del caso. Mediante la misma, declaró No Ha Lugar la *Moción de desestimación* presentada por los demandados y declaró Ha Lugar la *Demanda* sobre *injunction* permanente y sentencia declaratoria.

El foro de instancia decretó, *inter alia*, la validez y efectividad de la Escritura Núm. 130, sobre condiciones restrictivas de la

Urbanización Vista Real de Yauco. Asimismo, determinó que el referido instrumento público gravaba el solar adquirido por los demandados, por lo que estos quedaron obligados a cumplir con los términos y condiciones de la Escritura Núm. 130. Declaró también que, conforme a las condiciones restrictivas de la Urbanización, los demandados solo podían construir una de las residencias previamente diseñadas para la urbanización y añadió que la construcción de una residencia "a su gusto" era contraria a las condiciones restrictivas de la urbanización y, por consiguiente, ilegal. Por esta razón, ordenó a los demandados el cese y desista de construir una residencia que no fuera conforme a los modelos previamente diseñados.

En desacuerdo con la determinación del foro primario, los demandados acudieron ante este foro revisor mediante recurso de apelación. Posteriormente, el 25 de junio de 2024, emitimos Sentencia confirmando el pronunciamiento judicial impugnado.[1]

Así las cosas, el 23 de septiembre de 2024, la Asociación presentó ante el foro primario *Moción Solicitando Orden de Demolición*. Allí solicitó al foro de instancia que dictara Orden requiriendo a los demandados eliminar o demoler, a su costo, la edificación construida ilegalmente sobre el Solar Número Uno (1) de la Extensión de la Urbanización y que, a su vez, les ordenara someter los permisos, endosos o autorizaciones necesarias para llevar a cabo de forma ordenada la eliminación y demolición de la estructura.

Posteriormente, el foro de instancia dictó la *Orden* de 24 de septiembre de 2024, concediendo un término perentorio de veinte (20) días a los demandados para replicar y exponer su posición sobre la solicitud de demolición incoada por la Asociación.

---

[1] Véase, KLAN202300884.

Luego de varios trámites procesales, el 22 de noviembre de 2024, los demandados presentaron *Moción de Relevo de Sentencia.* Mediante la misma, arguyeron que los titulares de los otros seis solares que fueron segregados de la finca matriz eran partes indispensables que no fueron acumulados en el pleito. Añadieron que, los titulares de los solares que fueron segregados de la finca matriz otorgaron instrumentos públicos mediante los cuales revocaron cualquier condición restrictiva que gravara sus propiedades. Por lo que, concluyeron que, al amparo de la Regla 49.2 de Procedimiento Civil, procedía dejar sin efecto la sentencia del caso. Empero, el 24 de noviembre de 2024, el foro de instancia declaró no ha lugar la solicitud de relevo de sentencia.

En desacuerdo nuevamente, el 9 de diciembre de 2024, los demandados presentaron *Moción en Solicitud de Consignación de Determinaciones de Hecho y Conclusiones de Derecho Adicionales y Reconsideración.* Al día siguiente, el foro primario declaró no ha lugar la moción de los demandados.

Insatisfechos, el 10 de enero de 2025, los peticionarios, Willer Vélez Quiñones y Melanie F. López Torres, recurrieron ante este foro revisor señalando los siguientes errores:

> Erró el Honorable Tribunal de Primera Instancia al declarar "No Ha Lugar" la Moción en Solicitud en Relevo de Sentencia y negarle a la parte compareciente hacer descubrimiento de prueba, presentar prueba a su favor, contrainterrogar y rebatir los testigos y la prueba en su contra, según disponen las Reglas de Procedimiento Civil.

> Erró el Honorable Tribunal de Primera Instancia al determinar que las condiciones restrictivas de uso y edificación que afectan la residencia de los demandados no se extinguieron por acuerdo entre los propietarios de los inmuebles segregados de la finca número 17,002.

> Erró el Honorable Tribunal de Primera Instancia al no determinar que la sentencia es nula por falta de parte indispensable.

El 12 de febrero de 2025, la Asociación compareció mediante *Alegato de Parte Apelada.*

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

**II.**

**A.**

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *León v. Rest. El Tropical*, 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019). Las resoluciones u órdenes *postsentencia* no están comprendidas de forma expresa bajo ninguno de los incisos de la mencionada Regla. Este tipo de recurso debe evaluarse bajo los parámetros establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones para la expedición de un *certiorari*. 4 LPRA Ap. XXII-B, R. 40. Véase, *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012).[2]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso

---

[2] El recurso de *certiorari,* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, supra.

constituiría un abuso de discreción. *García v. Padró,* 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, evaluar, tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada. Ello, para tomar la determinación si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97-98 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González,* 149 DPR 859, 866 (1999).

**B.**

Recordemos que los remedios *postsentencia* son revisables ante nos mediante el auto de *certiorari.*

Como es sabido, toda sentencia dictada por un tribunal tiene a su favor una presunción de validez y corrección. Solo en ciertos escenarios muy particulares nuestro ordenamiento procesal civil permite a una parte solicitar el relevo de los efectos de una sentencia dictada previamente en su contra. *López García v. López García,* 200 DPR 50, 59 (2018). El relevo de sentencia es un mecanismo *postsentencia* que capacita al juzgador a eliminar o modificar su dictamen, con el objetivo de hacer justicia. *Piazza v. Isla del Río, Inc.,* 158 DPR 440, 479 (2003); *Ortiz Serrano v. Ortiz Díaz,* 106 DPR 445, 449 (1977). Este remedio es extraordinario, discrecional y se utiliza para impedir que tecnicismos y sofisticaciones frustren los fines de la justicia. *Pérez Ríos et al. v. CPE,* 213 DPR 203 (2023); *Vázquez v. López,* 160 DPR 714, 725 (2003). La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, regula dicho remedio. La misma dispone que:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a)    Error, inadvertencia, sorpresa o negligencia excusable;
>
> (b)    descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48 de este apéndice;
>
> [...]
>
> (c)    **nulidad de la sentencia**;
>
> [...]

(f)   cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Las disposiciones de esta regla no serán aplicables a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en los incisos (c) o (d) de esta regla. La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta regla no afectará la finalidad de una sentencia, ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:

(1) Conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;

(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal.

[...]

Este mecanismo tiene un rol dual: adelantar el interés de que los casos se resuelvan en sus méritos haciéndose justicia sustancial y, por otra parte, finalizar los pleitos. *Oriental Bank v. Pagán Acosta y otros*, 2024 TSPR 133, 215 DPR ___ (2024); *HRS Erase v. CMT*, 205 DPR 689, 698 (2020); *García Colón et al v. Sucn. González*, 178 DPR 527, 540 (2010). También se ha establecido que lo dispuesto en la Regla 49.2 de Procedimiento Civil, *supra*:

> [...] *aplica sólo en aquellas raras instancias en que existe un error jurisdiccional o una violación al debido proceso de ley que privó a una parte de la notificación o de la oportunidad de ser oída.* Esta regla no provee a las partes licencia para dormirse sobre sus derechos. (Énfasis suplido en el original). *López García v. López García*, supra, pág. 61, citando a J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., Estados Unidos, Pubs. JTS, 2011, T. IV, pág. 1415.

De ordinario, la determinación de relevar a una parte de los efectos de una sentencia está supeditada a la discreción del foro sentenciador. Sin embargo, ello encuentra su excepción en los casos de nulidad o cuando la sentencia ha sido satisfecha. *López García v. López García*, supra; *García Colón et al. v. Sucn. González*, supra. La nulidad de una sentencia por una violación al debido proceso de ley

puede materializarse de distintas maneras. *HRS Erase v. CMT,* supra, pág. 699.

Como norma general, las mociones de relevo de sentencia deben presentarse dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia. *HRS Erase v. CMT,* supra, pág. 698. Este término es de naturaleza fatal en su acción extintiva del derecho. *Sánchez Ramos v. Troche Toro,* 111 DPR 155, 157 (1981). Por ende, transcurrido dicho plazo, no puede adjudicarse la solicitud de relevo. *García Colón et al v. Sucn. González,* supra, pág. 543; *Bco. Santander P.R. v. Fajardo Farms Corp.*, 141 DPR 237, 243 (1996). No obstante, tales normas ceden cuando se trata de una sentencia que adolece de nulidad. *HRS Erase v. CMT*, supra, pág. 698, citando *Rivera v. Algarín*, 159 DPR 482, 490 (2003).

Cónsono con lo anterior, si una parte presenta una moción de relevo de sentencia amparado en el inciso (d) de la Regla 49.2 de Procedimiento Civil, *supra*, y demuestra que la sentencia es nula, el foro primario no tendrá discreción para denegarla. "[S]i una sentencia es nula, tiene que dejarse sin efecto independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado". *HRS Erase. v. CMT*, supra, pág. 698 citando a *García Colón et al. v. Sucn. González,* supra, págs. 543-544. Como es sabido, si una sentencia es nula, se tiene por inexistente y no surte efecto alguno. *López García v. López García,* supra, pág. 62. Una sentencia se considera nula cuando el tribunal actuó sin jurisdicción o cuando se quebrantó el debido proceso de ley de alguna de las partes. *García Colón et al. v. Sucn. González,* supra, pág. 543.

Ahora bien, reiteradamente se ha establecido que el remedio de reapertura no es una llave maestra para reabrir a capricho el pleito ya adjudicado. *Piazza v. Isla del Río, Inc.*, supra, pág. 449. Por

ello, debemos enfatizar que, aunque la reapertura existe en bien de la justicia, esta no constituye una facultad judicial absoluta, toda vez que a este mecanismo procesal se le contrapone la finalidad fundamental de certeza y estabilidad en los procedimientos judiciales, así como la rápida adjudicación de las controversias. Consecuentemente, les corresponde a los tribunales establecer un balance adecuado entre ambos intereses. *Íd.; Fine Art Wallpaper v. Wolff,* 102 DPR 451, 457-458 (1974).

Es importante consignar que una moción de relevo de sentencia no puede sustituir los recursos procesales de reconsideración o apelación. *Vázquez v. López,* supra, pág. 726; *Olmeda Nazario v. Sueiro Jiménez,* 123 DPR 294, 299 (1989). Sin embargo, en ciertas instancias puede concederse aún después de que la sentencia haya advenido final y firme. *Piazza v. Isla del Río, Inc.,* supra*; Pagán v. Alcalde Mun. de Cataño,* 143 DPR 314, 328 (1997).

Para otorgar un remedio contra los efectos de una sentencia, el tribunal debe determinar si bajo las circunstancias específicas del caso existen razones que justifiquen tal concesión. (Citas omitidas). Así, si la parte que solicita el relevo aduce una buena defensa —además de alguna de las circunstancias previstas en la Regla 49.2 de Procedimiento Civil, *supra*— y el relevo no ocasiona perjuicio alguno a la parte contraria, este debe ser concedido. *García Colón et al v. Sucn. González,* supra, págs. 540-541.

### C.

Las restricciones voluntarias sobre fincas de carácter real, antes conocidas como servidumbres en equidad, son aquellas limitaciones de uso, construcción, y ornato o fines análogos que se imponen a las fincas. 31 LPRA sec. 8081. Nuestro Código Civil de 2020 estableció que para que las restricciones voluntarias sobre predios sean válidas y eficaces contra todos es necesario que

cumplan con los siguientes requisitos: 1) las limitaciones deben ser razonables, 2) obedecer a un plan general de mejoras, 3) constar de manera específica en un instrumento público y 5) estar inscritas en el Registro de la Propiedad. 31 LPRA sec. 8082. Dicha figura jurídica es de carácter constitutivo, por lo que su validez depende de que las cláusulas restrictivas se hagan constar en escritura pública y la misma se inscriba en el Registro de la Propiedad. Es decir, las restricciones voluntarias son un contrato privado de naturaleza real, pues una vez inscrito, las condiciones impuestas en el referido contrato constituyen derechos reales oponibles *erga omnes. Ramírez Kurtz et als. v. SLG*, 2024 TSPR 97, 214 DPR ___ (2024); *Asociación Playa Húcares v. Rodríguez,* 167 DPR 255, 264 (2006).

Esto significa que, **el conocimiento de las limitaciones y condiciones impuestas en virtud de las restricciones voluntarias se imputa a todo presente y futuro adquirente de la propiedad que éstas gravan**. *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 327-328 (2021) (Énfasis nuestro). Por lo que, "[c]uando una persona tiene pleno conocimiento de las limitaciones de uso de una propiedad, nunca debe permitírsele llevar a cabo la conducta o actuación prohibida por tales restricciones". *Asoc. de Vec. Urb. Huyke v. Bco. Santander*, 157 DPR 521, 536 (2002).

En Puerto Rico, las restricciones voluntarias se utilizan mayormente para asegurar la conservación de la configuración arquitectónica o urbanística de los proyectos residenciales. Su propósito principal es preservar el valor, la belleza, la comodidad y la seguridad del reparto residencial. *Morales et al. v. Asoc. Propietarios*, 2024 TSPR 61, 213 DPR __ (2024). Este tipo de gravamen, aunque puede ser impuesto unilateralmente por el dueño urbanizador de una finca, es considerado como un contrato entre las partes, ya sea porque estas acuerdan gravar las propiedades

para delimitar su uso o el tipo de edificación que se pueden construir sobre ellas, o porque los futuros adquirentes de la propiedad ya gravada, al conocer de las restricciones inscritas en el Registro de la Propiedad, aceptan someterse a estas. *Asociación Playa Húcares v. Rodríguez, supra*, pág. 263; *Residentes Parkville v. Díaz*, 159 DPR 374, 384 (2003).

Ahora bien, el Código Civil de 2020 dispone que las restricciones voluntarias pueden modificarse o extinguirse: (1) en la forma y por las causas dispuestas en el acto jurídico que las establece; (2) por acuerdo unánime de los interesados, ya sea mediante la eliminación total o parcial de las restricciones o mediante la constitución de nuevas restricciones que alteran las anteriores; (3) por efecto del tiempo o por realizarse la condición, si así se constituyeron; (4) por renuncia o abandono de los propietarios que reciben los beneficios de las restricciones mediante conducta que demuestre una intención de renunciar a ellos o abandonarlos; (5) por expropiación forzosa, si las restricciones son incompatibles con el uso público de la finca expropiada y; (6) por cambios radicales del vecindario. 31 LPRA sec. 8086. Véase también, *Dorado del Mar v. Weber et al., 203 DPR* 31, 44 (2019); *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, pág. 537.

En cuanto a los cambios radicales, nuestro más Alto Foro ha señalado que el análisis a seguir es "si por razón de cambios radicales y permanentes en las condiciones de un vecindario, resulta prácticamente imposible realizar o lograr los fines que perseguía la [restricción voluntaria], entonces ésta queda modificada o extinguida". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra*, pág. 330; *BPPR v. Sucn. Talavera*, 174 DPR 686, 710 (2008)*; Asoc. Vec. Urb. Huyke v. Bco. Santander, supra*, pág. 542. Además, nos dice García Cárdenas que los cambios radicales deben ocurrir en una mayoría significativa de las propiedades afectadas por las

condiciones restrictivas. M. E. García Cárdenas, *Derecho de Urbanizaciones: servidumbres en equidad, controles de acceso e instalaciones vecinales,* San Juan, Ed. InterJuris, 2010, pág. 52. De este modo, el peso de la prueba recae sobre quien ataca las restricciones. *Asoc. Vec. Urb. Huyke v. Bco. Santander,* supra, pág. 542*.*

De otra parte, el Tribunal Supremo ha expresado que cuando existe interés de modificar las condiciones restrictivas, o restringirlas de algún modo, se tendrá que hacer por convenio de todos los propietarios y mediante escritura pública, inscribible en el Registro de la Propiedad Pública. A*sociación Playa Húcares v. Rodríguez,* supra, pág. 269.

**D.**

La Regla 16.1 de Procedimiento Civil es la que regula lo concerniente a la acumulación de partes indispensables. 32 LPRA Ap. V, R. 16.1. Esta es un corolario del principio establecido en nuestra Constitución que prohíbe que una persona sea privada de su libertad o propiedad sin un debido proceso de ley. Art. II, Sec. 7, Const. ELA.

En ese sentido, la regla sobre acumulación indispensable de partes tiene el propósito de proteger a la persona que no está presente de los efectos legales de la sentencia y así evitar que se multipliquen los pleitos. En todo caso, "[l]a falta de parte indispensable constituye un planteamiento tan relevante y vital que puede presentarse en cualquier momento, es decir, puede presentarse por primera vez en apelación e incluso puede suscitarse *sua sponte* por un tribunal apelativo ya que, **en ausencia de parte indispensable, el tribunal carece de jurisdicción**". *RPR & BJJ, Ex parte,* 207 DPR 389 (2021); *Romero v. SLG Reyes,* 164 DPR 721, 733 (2005), citando *Hernández Agosto v. López Nieves,* 114 DPR 601, 625 (1983) (Énfasis nuestro).

La Regla 16.1 de Procedimiento Civil, *supra*, define parte indispensable como, "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia". También, una parte indispensable es de la cual "[n]o se puede prescindir, pues, sin su presencia, las cuestiones litigiosas no pueden ser adjudicadas correctamente, ya que sus derechos quedarían afectados". *Allied Mgmt Group. v. Oriental Bank*, 204 DPR 374, 389 (2020); *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 479 (2019); *López García v. López García*, supra, pág. 63. La referida Regla nos señala que, dichas partes deben acumularse como demandantes o demandadas, según corresponda y, de rehusarse a unirse como demandante, podrá unirse como demandada. 32 LPRA Ap. V, R. 16.1. Por consiguiente, es esencial incluir a toda parte indispensable en un determinado pleito para que el decreto judicial emitido resulte completo. *Sánchez v. Sánchez*, 154 DPR 645, 678 (2001).

La anterior Regla tiene como objetivo impedir que la persona ausente sea privada de su propiedad sin un debido proceso de ley. *Romero v. SLG Reyes*, supra, en las págs. 733-734. Por consiguiente, de percatarse que hay ausencia de parte indispensable, debe desestimarse la acción. No empece a esto, dicha desestimación no tendrá efecto de una adjudicación en los méritos o cosa juzgada. *Romero v. SLG Reyes*, supra, pág. 734.

El tratadista Cuevas Segarra explica que, "[l]a determinación final de si una parte debe o no acumularse depende de los hechos específicos de cada caso individual. Exige una evaluación jurídica de factores tales como tiempo, lugar, modo, alegaciones, prueba, clases de derechos, intereses en conflicto, resultado y formalidad. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Estados Unidos, Pubs. JTS, 2011, T. II, pág. 695.

Como es harto conocido, la falta de parte indispensable "constituye una defensa irrenunciable que puede presentarse en cualquier [etapa] durante el proceso". *López García v. López García*, 200 DPR 50, 65 (2018). Es menester destacar que no acumular una parte indispensable priva al tribunal de jurisdicción sobre la persona, y como consecuencia, si emite una sentencia en ausencia de la parte indispensable, esta será nula. *Rivera Marrero v. Santiago Martínez*, supra, pág. 479; *García Colón v. Sucn. González*, supra, pág. 550.

**E.**

La Regla 59 de Procedimiento Civil establece la autoridad de los tribunales para declarar derechos, estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio. 32 LPRA Ap. V, R. 59.1. El mecanismo para llevar a cabo dicha facultad se conoce como la sentencia declaratoria. El propósito de una sentencia declaratoria es despejar una incertidumbre o poner fin a una controversia, pues se trata de un mecanismo procesal adecuado para anticipar potenciales demandas. *Suárez v. CEE. I*,163 DPR 347 (2004); *Charana v. Pueblo*, 109 DPR 641 (1980). Según ha sido interpretada la precitada regla, la sentencia declaratoria establece un mecanismo procesal de carácter remedial o profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra el promovente. *Romero Barceló v. ELA*, 169 DPR 460, 475 (2006).

También cabe indicar que la Regla 59.3 de Procedimiento Civil dispone que el tribunal podrá negarse a dar o registrar una sentencia o decreto declaratorio cuando tal sentencia o decreto, no haya de poner fin a la incertidumbre o controversia que originó el procedimiento. De esta manera, se establece que los tribunales

tendrán amplia discreción con relación a las peticiones de sentencias declaratorias. 32 LPRA Ap. V, R. 59.3.

**III.**

Como cuestión de umbral, nos corresponde determinar si debemos expedir el auto de *certiorari* a la luz de los criterios contenidos en la Regla 40 del Reglamento de este Tribunal, supra. Realizado dicho análisis, declinamos la invitación a intervenir con la discreción del foro primario. Veamos.

En el caso de marras, los peticionarios sostienen, en síntesis, que el foro primario erró al denegar el relevo de sentencia solicitado, toda vez que, a su entender, la Regla 49.2 de Procedimiento Civil y su jurisprudencia interpretativa disponen que, la solicitud de relevo de sentencia es un pleito independiente regido por las Reglas de Procedimiento Civil. En virtud de ello, señalan que la determinación del TPI fue arbitraria e injusta pues les negó la "oportunidad de ser oídos" conforme lo requiere el derecho constitucional del debido proceso de ley. Arguyeron además que el foro primario erró al denegar el relevo de sentencia pues alegan que las condiciones restrictivas de uso y edificación que afectaban su residencia se extinguieron por acuerdo de los propietarios. De otra parte, plantean que la referida *Sentencia* es nula por falta de partes indispensables.

En desacuerdo, la Asociación sostiene que para evaluar la solicitud de relevo de sentencia de los peticionarios no era obligatorio que el tribunal celebrara una vista. En consonancia, alega la recurrida que los argumentos expuestos por los demandados carecen de méritos puesto que están apoyados en escrituras públicas que fueron hechas para beneficio propio en la etapa *postsentencia*. A su vez, manifiesta que, para cancelar el efecto de las condiciones restrictivas sobre el predio de los peticionarios, era necesario contar con el consentimiento de tres cuartas partes de los miembros que componen la Asociación de Residentes.

Adicionalmente, señala que el foro primario adjudicó la controversia declarando los derechos contra aquellos titulares que violaron las condiciones restrictivas inscritas en el Registro de la Propiedad. Por ello, puntualiza que, debido a que los derechos de los demás titulares no se ven adversamente perjudicados, estos no eran partes indispensables en el pleito y, en consecuencia, la sentencia dictada no es nula.

De entrada, debemos apuntar que, el presente litigio se origina en una causa de acción de sentencia declaratoria. A esos efectos, en lo pertinente, la Regla 59.5, supra, expresa que "ninguna declaración perjudicará los derechos de personas que no sean partes en el procedimiento". Por ello, entendemos que los titulares de los demás solares segregados de la Extensión de la Urbanización, los cuales se alega no incurrieron en conducta prohibida por las restricciones, no son partes indispensables que debieron ser acumuladas en el pleito ante el foro de instancia.

No podemos olvidar que, una parte indispensable es "aquella de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final en el pleito sin lesionar sus derechos". *Sánchez v. Sánchez*, supra, pág. 678. Por tanto, no erró el foro primario al no determinar que la sentencia es nula por falta de parte indispensable.

Cabe destacar además que, la Escritura Núm. 130 sobre *Condiciones Restrictivas de Uso y Edificación Urbanización Vista Real* de 22 de agosto de 2005 dispone expresamente que "[las] restricciones se extenderán automáticamente por períodos de diez años, a menos que se otorgue un instrumento público **autorizado por tres cuartas partes de los miembros a esa fecha**, a los efectos de cambiar, alterar o modificar parte o la totalidad de las condiciones restrictivas". (Énfasis nuestro). Por lo que, una lectura del expediente refleja claramente que las condiciones restrictivas

continúan vigentes. Conforme a ello, los peticionarios se encuentran sujetos a cumplir con las disposiciones allí contenidas.

A la luz de los antes expuesto, colegimos que los peticionarios no han acreditado que se cumple algunas de las razones que establece la Regla 49.2 de Procedimiento Civil, *supra*. Como es sabido, este Tribunal no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitaría un perjuicio sustancial. Nada de lo anterior fue demostrado por los peticionarios en su escrito. Es preciso puntualizar que la Regla 49.2 de Procedimiento Civil, supra, no es "una llave maestra para reabrir a capricho el pleito ya adjudicado y echar a un lado la sentencia correctamente dictada." *Reyes v. ELA et al.*, 155 DPR 799, 809 (2001). Por ende, no procede la expedición del auto de *certiorari* solicitado.

**IV.**

Por los fundamentos antes esbozados, denegamos expedir el auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones